Jonathan A. MENDE, Plaintiff,

v.

MILESTONE TECHNOLOGY, INC.,
Paul J. Reep, Stephen Q. Williams,
and Randall C. Budge, Defendants.

No. 02 Civ. 5275(RMB).

United States District Court,
S.D. New York.

May 22, 2003.

**ORDER**

BERMAN, District Judge.

## I. Introduction

On or about June 4, 2002, Jonathan A. Mende ("Mende" or "Plaintiff") filed this action against Milestone Technology, Inc. ("Milestone"), Paul J. Reep ("Reep"), Stephen Q. Williams ("Williams"), and Randall C. Budge ("Budge") (collectively "Defendants") in New York State Supreme Court for the County of New York. *See* Verified Complaint, dated June 4, 2002 ("Complaint" or "Compl."). On July 10, 2002, Defendants removed the action to this Court on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332.

On September 12, 2002, Defendants filed a motion to dismiss the Complaint ("Def.Mem."), arguing that: (i) pursuant to Rule 12(b)(5), service of process on Defendants by regular mail was "deficient and defective service as a matter of law." Def. Mem. at 16; (ii) pursuant to Rule 12(b)(2), "all of the Defendants are citizens of the State of Idaho and none of them at any time were physically present in New York or had sufficient contact with [t]he State of New York ... to give this Court jurisdiction over them," Def. Mem. at 7; and (iii) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff "fails to state a claim upon which ... legal relief may be granted," Def. Mem. at 4.

On October 11, 2002, Plaintiff submitted a memorandum of law in opposition to Defendants' motion ("Pl.Opp.") arguing that: (i) "the mailing of the Summons and Complaint to Defendants in Idaho was sufficient service," Pl. Opp. at 10; (ii) "[D]efendants have had sufficient contact with this jurisdiction to subject them to the personal jurisdiction of this Court" pursuant to Section 301 and 302(a)(1) of the New York Civil Practice Law and Rules ("CPLR"), Pl. Opp. at 6; and (iii) "Defendants have not provided any adequate support for their motion to dismiss." Pl. Opp. at 5. Defendants filed a reply on October 25, 2002 ("Def.Reply"). The Court heard oral argument on May 15, 2003. **For the reasons set forth below, Defendants' motion to dismiss is granted.**

## II. Background

Plaintiff, a New York resident, alleges that he is a 25 percent owner of Milestone and brings this action to obtain a stock certificate representing his ownership interest. *See* Compl. ¶ 22 ("Plaintiff is entitled to said stock certificate representing 25% interest in defendant Milestone"). Milestone is an Idaho corporation with its principal place of business in Beckfort, Idaho and was created to "provide high technology scanning devices for airport security among other applications." Compl. ¶ 8. Reep, Williams and Budge are all residents of Idaho and allegedly are shareholders and officers of Milestone.[1] *See* Compl. ¶¶ 3–5. Plaintiff first became involved with Defendants in the Summer of 1999 when Reep contacted Mende's company, Flight Fantasy, about using a private aircraft for travel to Australia. *See* Affidavit of Jonathan A. Mende, dated October 11, 2002 ("Mende Aff.") ¶ 3. In May 2000, Reep again contacted Plaintiff, this time telling Mende about Milestone and seeking assistance, including, among other things, raising capital for Milestone. *Id.* ("his interest in me was based on the belief that I might be able to aid the company in raising the necessary capital to effectuate the company's business plan and assist in the marketing of the company's products").

Mende met with Reep, Williams and Budge in Idaho to discuss Milestone's business in or around late September 2000. Mende Aff. ¶ 4. At that time, apparently without signing any documents or receiving any shares of stock, Plaintiff "understood" that he was a shareholder in Milestone. Mende Aff. ¶ 5 ("During the meeting, it was always my understanding

---

1. In an affidavit dated September 9, 2002, Budge states that he has "never been 'a shareholder and officer of defendant Milestone' as incorrectly alleged in paragraph 5 of the Verified Complaint." Affidavit of Randall C. Budge, dated Sept. 9, 2002 ("Budge Aff.") ¶ 5. Budge says that he acted as legal counsel to Milestone, Reep, and Williams. *See* Budge Aff. ¶ 2 ("I represented defendants Milestone ... and its two officers, directors and shareholders Paul J. Reep and Stephen G. Williams ....").

that I was a Shareholder in Defendant [Milestone]."). Plaintiff alleges that he "spent substantial time" on Milestone's business activities, including dealing with potential distributors and helping Milestone to raise capital. Mende Aff. ¶ 6 ("during the Summer of 2000, I spent substantial time on [Milestone's] business activities . . . . based upon my understanding that I was a shareholder of [Milestone]").

Defendants contend that Plaintiff was never an owner of Milestone and that any interest Plaintiff had in the Company was contingent upon the closing of a Merger Agreement, dated March 2001 ("Merger Agreement"), that required Plaintiff to secure $750,000 in financing for a newly formed Delaware corporation, Milestone Technology Systems, Inc. ("Milestone Delaware"). See Budge Aff. ¶ 12 ("The . . . Agreement provided that Mr. Mende's entitlement to shares in [Milestone] was totally conditioned on (i) the successful raising of the required minimum amount of capital by [Milestone] Delaware which was originally set at $850,000 and subsequently reduced to $750,000 and (ii) the closing of the proposed Agreement."). Defendants argue that because Plaintiff did not raise the required $750,000, there was no merger and Mende is not entitled to any shares of Milestone. *Id.* ("Neither of these two conditions precedent were ever satisfied . . . .").[2]

Plaintiff does not allege that any of the individual Defendants had any contact with New York, but instead says that "**the ac-tions and conduct of [Milestone] bind the other Defendants regarding the conduct of business within the state of New York.**"[3] Pl. Opp. at 1. Plaintiff alleges that Milestone "had a continuous presence in New York, both in the form of endeavoring to sell [Milestone's] product . . . and the raising of funds for its business," Mende Aff. ¶ 13, and that Milestone's general business plan is to solicit business at "major airports, federal buildings, courthouses and schools." Mende Aff. ¶ 14. Plaintiff also alleges that he acted as "representative/agent" for Milestone in New York, and that he "was asked to assist [Milestone] in raising capital, effectuating the proposed merger and market[ing] its products." *Id.*

Plaintiff alleges that in the Spring of 2001 he "brought a potential distributor to the Washington Irving High School in Manhattan to show him a model of one of Defendant MTI's products." Mende Aff. ¶ 7. In a reply affidavit Defendants contend, and Plaintiff does not dispute, that the "prototype device that Mr. Mende visited at Washington Irving High School was owned, financed and designed by the Department of Energy ('DOE') and the National Institute of Justice ('NIJ')," and that Milestone "never had any ownership interest in the prototype security device nor was this field operational test by the DOE and NIJ connected to any sales effort by [Milestone]." *See* Affidavit of Stephen Q. Williams, filed on October 25, 2002 ("Williams Aff.") ¶¶ 18, 20.

---

**2.** At oral argument, counsel for Defendants informed the Court that on September 19, 2002, during the pendency of this action, Defendants Reep and Williams filed suit against Mende in the Sixth Judicial District for the State of Idaho, alleging a violation of the Merger Agreement. *See Reep v. Mende,* CVOC–02–2051C, Summons and Complaint, dated Sept. 19, 2002. Plaintiff failed to appear, and on October 24, 2002, the Clerk of the Court for the Sixth Judicial District en-tered a default judgment against Mende. *See Reep v. Mende,* CVOC–02–2051C, Clerk's Default, dated Oct. 24, 2002.

**3.** Plaintiff alleges no independent bases (i.e. other than the conduct of Milestone) for the Court to exercise jurisdiction over the individual Defendants. *See infra* Section IV(B)(1), n. 5.

Plaintiff alleges that in May of 2001, in connection with the Merger Agreement, Mende arranged for an associate, Ted Gaillard ("Gaillard"), to loan Milestone $225,000 through Milestone Delaware and that the loan agreement was "prepared in New York by a New York law firm." *See* Mende Aff. ¶ 14.[4] At oral argument, counsel for Plaintiff argued that the loan was negotiated and obtained in New York. *See, e.g.,* Pl. Opp. at 7 ("Defendants ... did borrow money within the state which loan was prepared by New York counsel acting on behalf of the lender negotiating with defendants' agent in New York.").

## III. Standard of Review

 "[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am. Holding Corp.,* 191 F.Supp.2d 382, 387 (S.D.N.Y.2002). "Conclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served with process." *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 658 (S.D.N.Y.1997), *aff'd,* 173 F.3d 844, 1999 WL 265022 (2d Cir.1999). When a defendant raises a Rule 12(b)(5) "challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." *Preston v. New York,* 223 F.Supp.2d 452, 466 (S.D.N.Y. 2002).

 Likewise, on a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Kernan v.*

*Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999). "If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). The Court will not "will not draw 'argumentative inferences' in the plaintiff's favor," but will "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations." *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994). "Conclusory allegations are not enough to establish personal jurisdiction." *Harris v. Wells,* 832 F.Supp. 31, 34 (D.Conn.1993).

## IV. Analysis

Before addressing Defendants' Rule 12(b)(6) motion to dismiss, the Court must first address the preliminary questions of service and personal jurisdiction. *See, e.g., Arrowsmith v. United Press Int'l,* 320 F.2d 219 (2d Cir.1963) ("logic compel[s] initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim.").

### A. Service of Process

 Defendants argue that "Mende attempted to make service on all of the Defendants by mailing the Summons with Notice and Verified Complaint herein [by] regular mail at their respective addresses in Idaho which is deficient and defective service as a matter of law." Def. Mem. at 16. Plaintiff responds that "mailing the Summons and Complaint to Defendants in

---

**4.** *See* Mende Aff. ¶ 6 ("Mr. Gaillard, caused Milestone Technology Systems, Inc. to loan [Milestone] approximately ... $225,000 ...

in the Spring of 2001."). Defendants claim the loan was for $125,000. *See* Williams Aff. ¶ 17.

Idaho was sufficient service pursuant to Section 313 of the CPLR." Pl. Opp. at 10.

Section 313 of the CPLR provides that service on a party outside of New York may be made "in the same manner as service is made within the state," where the Court has jurisdiction over that party pursuant to either Section 301 or Section 302 of the CPLR. *See* CPLR § 313. Pursuant to CPLR Section 312–a, a plaintiff may serve a defendant by mailing the summons, complaint, an acknowledgment form and a return envelope, postage prepaid to the defendant. *See* CPLR. § 312–a(a). For service by mail to be effective, the defendant must then "sign, date and complete the acknowledgment . . . and mail or deliver one copy of the completed form to the sender within thirty days." CPLR. § 312–a(b); *see also Dillion v. U.S. Postal Serv.*, No. 94 Civ. 3187(SAS), 1995 WL 447789, at *4 (S.D.N.Y. July 28, 1995) ("Service is not complete until the defendant returns the acknowledgment form to the plaintiff, and '[i]f the acknowledgment of receipt is not mailed or returned . . . [the plaintiff] is required to effect personal service in another manner.'") (citation omitted).

Defendants assert that "[u]nder the instant facts Mr. Mende's attempted service under 312–a is fatally defective as, *inter alia*, (i) he did not include 'two copies of a statement of service by mail and acknowledgment of receipt . . . with a return envelope, postage prepaid, addressed to the sender' as required by CPLR § 312–a(a), nor (ii) did any Defendant 'complete the acknowledgment of receipt' . . . as required by CPLR § 312–a(b)." Def. Reply at 8. And, Plaintiff does not contend that he ever sent or received an acknowledgment form. Indeed, Plaintiff concedes that service upon Defendants was attempted solely "by mailing the summons with notice and verified complaint by regular

mail to each of the Defendant[s]' respected [sic] addresses in Idaho without adding the prepaid postage in order to attain acknowledgment of receipt." Mende Aff. ¶ 15. This is not sufficient service pursuant to Section 312–a. *See Sunbear Systems v. Schaffhauser*, No. 98 Civ. 1500, 1998 WL 265239, at *1 (S.D.N.Y. May 26, 1998) ("Although personal service by mail is permitted under CPLR Section 312–a, there is no evidence that plaintiff included an acknowledgment of receipt of service form, or that the defendants executed such an acknowledgment, as required by that provision. Accordingly, service on the defendants was clearly improper, and the Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5)."); *see also Buggs v. Ehrnschwender*, 968 F.2d 1544, 1549 (2d Cir.1992) ("Ehrnschwender did not return the acknowledgment of service, which Section 312–a(b) explicitly requires for service to be complete.").

Plaintiff argues that his failure to obtain an acknowledgment from the Defendants "is an immaterial item which if necessary can be rectified without prejudice to Defendants." Pl. Opp. at 9; *see also Blessinger v. United States*, 174 F.R.D. 29, 30–31 (E.D.N.Y.1997) (Rule 4(m) of the Federal Rules of Civil Procedure "allows the court, in its discretion, to extend the time for service . . . . If the plaintiff has shown good cause, the extension is mandatory."). Because, as will be shown below, Plaintiff fails to establish personal jurisdiction over Defendants it would be futile for Plaintiff properly to serve the Defendants. *See Gonzalez v. Luongo*, No. 97 Civ. 1831, 1999 WL 504931, at *1 (S.D.N.Y. July 16, 1999) (denying request for leave to perfect service because "service of the complaint would be futile").

**B. Personal Jurisdiction**

"In diversity cases arising in this Circuit, personal jurisdiction is determined

by the law of the state in which the district court sits, which in this case is New York." *Distefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir.2001). Defendants argue that: (i) Plaintiff cannot establish that the Defendants were "doing business" in New York; and (ii) Plaintiff's cause of action does arise out of a "New York transaction." Def. Reply at 4 n. 4. Plaintiff replies that the Court has jurisdiction over Defendants: (i) pursuant to Section 301 because Milestone "has solicited business on a continuous and consistent bases within this State," Pl. Opp. at 6; and (ii) pursuant to Section 302(a)(1) because Plaintiff's cause of action arises from the transaction of business in New York. Pl. Opp. at 9.

### 1. CPLR § 301

 "Under New York law, a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state." *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 95 (2d Cir.2000) (citing CPLR § 301). "[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58 (2d Cir.1985)

(quoting, *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915 (1917)).[5]

 "The traditional indicia that courts rely upon in deciding whether a foreign corporation is 'doing business' in New York include: 1) the existence of an office in New York; 2) the solicitation of business in New York; 3) the existence of bank accounts or other property in New York; and 4) the presence of employees in New York." *Insight Data Corp. v. First Bank Sys., Inc.,* No. 97 Civ. 4896, 1998 WL 146689, at *4 (S.D.N.Y. Mar.25, 1998).

 Plaintiff acknowledges that "Defendants may not have an office, telephone or bank account in New York." *See* Pl. Opp. at 7; *see also Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.,* 2 F.Supp.2d 470, 473 (S.D.N.Y.1998) ("In this case, it is undisputed that Reymer has no office, maintains no bank accounts or other property, and has no employees in New York."). Instead, Plaintiff (unpersuasively) argues that Defendants, through Milestone, solicited business in New York by participating in the testing program at Washington Irving High School. *See supra* Section II. Plaintiff also alleges that Milestone's general business plan is to solicit business at "major airports, federal buildings, courthouses and schools," Mende Aff. ¶ 14, but fails to identify a single New York airport, federal building, courthouse or school. Plaintiff's allegations are insufficient to establish jurisdic-

---

**5.** Under New York law, "individual corporate officers may be subject to jurisdiction in New York if it is established that the corporation is acting as their agent here. However, a corporation is not necessarily the agent of a corporate officer simply by virtue of the officer's position with the company." *Kinetic Instruments, Inc. v. Lares,* 802 F.Supp. 976, 984 (S.D.N.Y.1992). Rather, the party asserting jurisdiction must establish that the corporation acted "with the knowledge and consent of the officer and the officer must have exercised control over the corporation in the

transaction." *Id.; see also Karabu Corp. v. Gitner,* 16 F.Supp.2d 319, 323 (S.D.N.Y.1998) ("an out-of-state corporate officer who has not personally transacted business in New York, can still be subject to personal jurisdiction under § 302(a)(1) of New York's long-arm statute, if it can be shown that the corporation transacted business in New York as the officer's agent"). As discussed *supra* at Section II n. 3, Plaintiff alleges only that the Court has jurisdiction over the individual Defendants based on Milestone's alleged activities within New York.

tion as Milestone's "contacts with New York in this regard are limited, sporadic, and not so substantial and continuous as to support a finding that the [defendants] are doing business here." *Nordic Bank PLC v. Trend Group Ltd.*, 619 F.Supp. 542, 566 (S.D.N.Y.1985); *see also Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5663(MBM), 2001 WL 1468168, at *5 (S.D.N.Y. Nov.19, 2001) ("Even were I to find that the moving defendants did solicit business from New York CMRs, 'mere solicitation' of business or 'mere sales' in New York do not constitute a corporate presence in New York.").

 Plaintiff also argues that Milestone was "doing business" in New York when Plaintiff arranged the $225,000 loan from Gaillard. *See* Pl. Opp. at 7. This is not sufficient to establish jurisdiction. "Raising financing is not a form of 'doing business' for the purpose of § 301; if it were, then almost every company in the country would be subject to New York's jurisdiction." *Clarke v. Fonix Corp.*, No. 98 Civ. 6116, 1999 WL 105031, at *5 (S.D.N.Y. Mar.1, 1999) *aff'd*, 199 F.3d 1321, 1999 WL 1012422 (2d Cir.1999); *see also Crucible Ventures, Inc. v. Futuresat Indus., Inc.*, No. 88 Civ. 4251, 1990 WL 16140, at *2 (S.D.N.Y. Feb.15, 1990) ("this Court does not find, as a legal matter, that the solicitation and execution of business loans ... constitutes 'doing business' for jurisdictional purposes"). Milestone's activities, as alleged in the Complaint and in the Mende Affidavit, fall far short of establishing the requisite "continuous, permanent, and substantial activity in New York." *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990).

 Plaintiff argues that his own actions in New York State, allegedly undertaken as an "agent" of Milestone, are (independently) sufficient to establish jurisdiction. *See* Pl. Opp. at 2 ("As a repre-

sentative/agent of [Milestone] it is clearly acknowledged by Defendants that Plaintiff, a New York resident, was asked to assist [Milestone] in raising capital, effectuating the proposed merger and according to Plaintiff market its products."). This argument is unavailing. Plaintiff cannot rely upon his own actions in New York to establish jurisdiction over the Milestone. *See, e.g., Stein v. Microelectronic Pkg., Inc.*, No. 98 Civ. 8952, 1999 WL 540443, at *5 (S.D.N.Y. July 26, 1999) ("It is well established ... that in a suit between an agent and his out-of-state principal, a court cannot exercise jurisdiction over the defendant-principal based on the plaintiff-agent's own activities within the state."); *Kulas v. Adachi*, No. 96 Civ. 6674, 1997 WL 256957, at *3 (S.D.N.Y. May 16, 1997) ("even if plaintiff acted as KK Adachi's agent in New York and even if his activities rose to the level of doing business under C.P.L.R. § 301, plaintiff's activities could not confer personal jurisdiction over KK Adachi in this action"); *Metro. Air Serv., Inc. v. Penberthy Aircraft Leasing Co.*, 648 F.Supp. 1153, 1157 (S.D.N.Y.1986) (New York law provides that "in a suit between an agent and his out-of-state principal, there is no jurisdiction over the principal where the plaintiff-agent 'is relying on his own activities within the State, rather than on defendant's independent activities.' ") (citation omitted).

### 2. CPLR § 302(a)(1)

 Section 302(a)(1) of the CPLR "gives New York personal jurisdiction over a nondomiciliary if two conditions are met: first, the nondomiciliary must 'transact business' within the state; second, the claim against the nondomiciliary must arise out of that business activity." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). "Transacting business" under Section 302 "requires only a minimal quantity of activity, provided that it is of

the right nature and quality." *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate,* 731 F.Supp. 587, 592 (S.D.N.Y.1990) (citations and internal quotations omitted). The showing necessary for a finding that a defendant "transacted business" under Section 302(a)(1) is considerably less than the showing required for a finding that a defendant was "doing business" under Section 301. *See Hoffritz,* 763 F.2d at 58. A single transaction might be sufficient to fulfill this requirement so long as the relevant cause of action also arises out of that transaction. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999). A "claim 'arises out of' a defendant's transaction of business in New York 'when there exists "a substantial nexus" between the business transacted and the cause of action sued upon.'" *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 31 (2d Cir.1996) (citation omitted).

 Plaintiff contends that "negotiating and executing the loan agreement through the lender's New York law firm, in and of itself, is sufficient to establish jurisdiction under [Section 302(a)(1) ] of the CPLR." Pl. Opp. at 9. That is, Plaintiff argues that Milestone transacted business in New York by borrowing $225,000 from Gaillard.

As a preliminary matter, it is far from clear that the loan negotiations between Milestone and Gaillard constitute the "transaction of business" pursuant to Section 302(a)(1). *See, e.g., Worldwide Futgol Assocs. v. Event Entm't,* 983 F.Supp. 173, 177 (E.D.N.Y.1997) ("New York courts have held that conducting contractual negotiations by phone, fax or mail with a party in New York does not constitute the transaction of business within the state."). Assuming, arguendo, that Milestone did transact business in New York by borrowing $225,000 from Gaillard, Plaintiff's claims, nevertheless, do not "arise" from

that transaction. *See Paumgarten v. Handels–Und Privatbank,* No. 90 Civ. 8285, 1992 WL 18844, at *2 (S.D.N.Y. Jan.29, 1992) ("Even assuming that defendant's involvement in the loan transactions constituted transaction of business for purposes of § 302(a)(1), '[i]t is not sufficient for jurisdiction under [§ 302(a)(1)] that the defendant has performed an act in New York; it is also required that the cause of action arise from that act.'") (citations omitted). Plaintiff was not a party to the loan agreement, *see* Mende Aff. ¶ 6; *see also Cooper v. Parsky,* No. 95 Civ.10543 (JGK)(NRB), 1997 WL 242534, at *11 (S.D.N.Y. Jan. 8, 1997) ("Plaintiffs have not shown that their claims are directly related to, or have any connection to, the investment agreement between Southwest and USP."), *aff'd in part, vacated in part,* 140 F.3d 433 (2d Cir.1998), and, most importantly, his claim to shares of Milestone does not arise from that transaction. *See* Compl. ¶¶ 6, 10. Rather, Plaintiff contends that he became a shareholder in Milestone (no later than) at a meeting in Idaho in September 2000, at least five months before the Gaillard loan to Defendants. *See, e.g., Snyder v. Ply Gem Indus., Inc.,* 200 F.Supp.2d 246, 249 (S.D.N.Y.2001) ("the dispute itself does not arise out of the merger, but rather from the interpretation of Mr. Snyder's employment contract, which was signed fully two years before the merger"); *Cavalier Label Co. v. Polytam, Ltd.,* 687 F.Supp. 872, 878, n. 3 (S.D.N.Y.1988). ("The fraud alleged here, however, does not arise from the making of the contract, but rather from representations allegedly made prior to the contract."). As Mende himself concedes: "Plaintiff made the agreement to accept share certificates of [Milestone] with the officers and shareholders of [Milestone] both on the telephone in the Summer of 2000 and in face to face meetings with Defendants Reep, Williams and Budge in September 2000." Pl. Opp. at 4.

Because Plaintiff has failed to establish jurisdiction over Milestone, and because jurisdiction over the individual Defendants was alleged to be derivative of "the actions and conduct of [Milestone]" Pl. Opp. at 1, there is no basis for the Court to find that it has jurisdiction over the individual Defendants. *See, e.g., Jacobs v. Felix Bloch Erben Verlag,* 160 F.Supp.2d 722, 739 (S.D.N.Y.2001). Nor does the Court does reach Defendants' argument that Plaintiff has failed to state a claim pursuant to Rule 12(b)(6). *See, e.g., Int'l Customs Assocs., Inc. v. Ford Motor Co.,* 893 F.Supp. 1251, 1263 n. 11 (S.D.N.Y.1995).

## V. Order

For the foregoing reasons, Defendants' motion to dismiss the Complaint [9] is granted. The Clerk is respectfully requested to close this case.