Malek HARRISON, Plaintiff,

v.

State of NEW YORK; County of Nassau; Nassau County Police Department; Ronald Rispoli; Anthony Dicaprio; Jeffrey S. Marshall; Nassau County Office of the District Attorney; Jhounelle Cunningham; The TJK Companies, Inc.; Nils Renner; Christine Grimaudo; United States Secret Service; Joseph Gerbino; Geoffrey Prime; and The Law Office of Elliot Schlissel, Defendants.

No. 14–CV–1296 (JFB)(AKT).

United States District Court,
E.D. New York.

Signed March 20, 2015.

Malek Harrison, Rosedale, NY, pro se.

Lori L. Pack, Office of the New York State Attorney General, Hauppauge, NY, Ralph J. Reissman, Mineola, NY, Craig M. Dolinger, McAndrew Conboy & Prisco LLP, Woodbury, NY, Diane C. Leonardo–Beckmann, United States Attorneys Office, Central Islip, NY, Daniel M. Maunz, Scott E. Kossove, Amy M. Monahan, L'Abbate, Balkan, Colavita & Contini, LLP, Garden City, NY, Jordan S. Palatiello, Matthew K. Flanagan, Catalano Gallardo & Petropoulos, LLP, Jericho, NY, for Defendants.

ORDER

JOSEPH F. BIANCO, District Judge:

Before the Court is a Report and Recommendation ("R & R") from Magistrate Judge Tomlinson, recommending that the Court grant the defendants' separate motions to dismiss *pro se* plaintiffs claims, except with respect to the claims against U.S. Secret Service Agent Joseph Gerbino ("Agent Gerbino") in his individual capacity. For the reasons set forth below, having considered the parties' submissions, as well as having reviewed the entire R & R *de novo* (with Agent Gerbino's objections), the Court adopts Magistrate Judge Tomlinson's thorough and well-reasoned R & R in its entirety, and grants *pro se* plaintiff an additional 30 days to serve Agent Gerbino with the summons and complaint.

I. PROCEDURAL HISTORY

On February 26, 2014, *pro se* plaintiff Malek Harrison filed this complaint under 42 U.S.C. § 1983 alleging violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights based on his arrest and prosecution in state court for criminal possession of a forged instrument. The following defendants have moved to dismiss the claims: the State of New York ("the State") on May 19, 2014 (Docket No. 23); the U.S. Secret Service and Agent Gerbino (collectively, "the Federal Defendants") on August 25, 2014 (Docket No. 47); the TJX Companies, Inc., Christine Grimaudo, and Nils Renner (collectively, "the TJX Defendants") on June 9, 2014 (Docket No. 29); Attorney Geoffrey Prime on April 17, 2014 (Docket No. 13); and the Law Office of Elliot Schlissel on May 2, 2014 (Docket No. 14). By Order dated August 29, 2015, the Court referred the motions to dismiss to Magistrate Judge Tomlinson for an R & R.

On February 13, 2015, Magistrate Judge Tomlinson issued an R & R recommending that the Court: (1) grant the State's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1); (2) grant the Federal Defendants' motion to dismiss plaintiffs claims against the Secret Service and Agent Gerbino in his official capacity under Rule 12(b)(1) for lack of subject matter jurisdiction, but deny their motion to dismiss plaintiff's claims against Agent Gerbino in his individual capacity and grant plaintiff 30 days to effectuate service of the summons and complaint upon Agent

Gerbino; (3) grant the TJX Defendants' motion to dismiss under Rule 12(b)(6); (4) grant the Law Office of Elliot Schlissel's motion to dismiss; (5) grant Attorney Prime's motion to dismiss; (6) decline to exercise supplemental jurisdiction over the state law claims against the TJX Defendants, Attorney Prime, and the Law Office of Elliot Schlissel; and (7) deny plaintiff leave to re-plead the dismissed claims.

The R & R further instructed that any objections be submitted within fourteen (14) days of service of the R & R. (*See* R & R dated February 13, 2015 at 45.) As indicated by the docket sheet, copies of the R & R were mailed to plaintiff by the Federal Defendants, the Law Office of Elliot Schlissel, Attorney Prime, and the TJK Defendants on February 17, 2015 and February 18, 2015. (*See* ECF Nos. 54–57.) Agent Gerbino submitted his objections to the R & R on February 27, 2015. *Pro se* plaintiff has filed no objections to date, although the date for filing any objections has expired.

## II. STANDARD OF REVIEW

A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y. 1988). As to those portions of a report to which no "specific written objections" are made, the Court may accept the findings contained therein without *de novo* review, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See* Fed.R.Civ.P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.,* 956 F.Supp. 509, 513 (S.D.N.Y. 1997). When "a party submits a timely objection to a report and recommendation, the district judge will review the parts of the report and recommendation to which the party objected under a *de novo* standard of review." *Jeffries v. Verizon,* 10–CV–268 (JFB)(AKT), 2012 WL 4344188, at *1 (E.D.N.Y. Sept. 21, 2012); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed.R.Civ.P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

## III. ANALYSIS

### A. The Claims Against Agent Gerbino

Here, Agent Gerbino filed a timely objection to Judge Tomlinson's R & R on February 27, 2015. As a result, the Court will conduct a *de novo* review of the portions of the R & R to which Agent Gerbino objects, namely the portion that grants plaintiff a 30-day extension to properly effectuate service and that declines to consider other Rule 12(b)(6) grounds for dismissal of the claims against Agent Gerbino in his individual capacity. (Agent Gerbino's Objections at 4.)

### i. The Relevant Portions of the R & R

To summarize, the Federal Defendants moved for dismissal of the claims against Agent Gerbino under three theories: first, that the claims against the Secret Service and Agent Gerbino in his official capacity are barred by sovereign immunity; second, that the claim against Agent Gerbino in his individual capacity should be dismissed under Rule 12(b)(5) because *pro se* plaintiff failed to serve Agent Gerbino with the complaint; and, third, that the claims

against Agent Gerbino should be dismissed under Rule 12(b)(6) because plaintiff's false arrest claims are time-barred, plaintiff has failed to adequately state a claim of unconstitutional misconduct by Agent Gerbino, and Agent Gerbino is entitled to qualified immunity. (Federal Defs' Mem. Of Law in Support of Motion to Dismiss the [C]omplaint, 5–12.)

In the R & R, Judge Tomlinson recommends that the Court dismiss the claims against the Secret Service and Agent Gerbino in his official capacity under Rule 12(b)(1) for lack of subject matter jurisdiction. However, after reviewing the Federal Defendants' second argument—namely, that the action should be dismissed under Rule 12(b)(5) for lack of service—Judge Tomlinson concludes that "although Plaintiff failed to serve Agent Gerbino or show good cause for lack of service, he should be granted a discretionary extension to effectuate service upon Agent Gerbino in his individual capacity." (R & R at 17.) Accordingly, Judge Tomlinson recommends that the Court deny the motion to dismiss the claims against Agent Gerbino in his individual capacity and grant plaintiff an additional 30 days within which to serve the summons and complaint upon Agent Gerbino. (Id.) As the question of proper service is a jurisdictional matter, Judge Tomlinson notes that the Court "should first address the preliminary questions of service and personal jurisdiction before turning, if necessary to the defendants' Rule 12(b)(6) arguments." (R & R at 20 (quotation marks and citation omitted).) As a result, the R & R does not address the Federal Defendants' additional arguments for dismissal of the claims against Agent Gerbino under Rule 12(b)(6).

### ii. *Agent Gerbino's Objections*

Agent Gerbino first objects to Judge Tomlinson's recommendation that the Court provide *pro se* plaintiff with addi-

tional time to effectuate service. Agent Gerbino argues that granting a 30–day extension "contravenes this Court's order on March 5, 2014, directing [p]laintiff to serve the [c]omplaint on the [d]efendants on or before June 26, 2014" (Agent Gerbino's Objections at 4), and that the four factors outlined in *Purzak v. Long Island Housing Servs., Inc.* do not weigh in favor of granting the plaintiff an extension absent a showing of good cause. No. 12–CV–1747, 2013 WL 5202711, at *5 (E.D.N.Y. Sept. 13, 2013). After reviewing Judge Tomlinson's recommendations, the Court agrees with her finding that "the [*Purzak*] factors militate against dismissal of the Complaint and weigh in favor of granting Plaintiff—a *pro se* litigant—a final opportunity to effectuate proper service on Agent Gerbino." (R & R at 24–25.) As Magistrate Judge Tomlinson notes, in analyzing the factors, there is no prejudice to Agent Gerbino to allowing re-service. If plaintiff re-serves, Agent Gerbino can simply re-file his same Rule 12(b)(6) motion and the Court will address it expeditiously once plaintiff is given an opportunity to respond, including providing any possible basis for equitable tolling.

▄▄▄ Agent Gerbino also objects to the fact that Judge Tomlinson did not consider the Federal Defendants additional arguments for dismissal under Ruler 12(b)(6). After *de novo* review and thorough consideration of Agent Gerbino's objections, the Court once again agrees with Judge Tomlinson's analysis. It is well established that "where a defendant moves for dismissal under Rules ... 12(b)(5) and 12(b)(6) 'logic compel[s] initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim.'" *Hertzner v. U.S. Postal Service,* No. 05–cv–2371 (DRH)(ARL), 2007 WL 869585, at *3

(E.D.N.Y. March 20, 2007) (quoting *Arrowsmith v. United Press International*, 320 F.2d 219, 221 (2d Cir.1963)). Furthermore, when a plaintiff "fail[s] to meet [his] burden that the Court has jurisdiction over the Moving Defendants ... the Court 'lacks power to dismiss [the C]omplaint for failure to state a claim.'" *Hertzner*, 2007 WL 869585, at *8 (quoting *Arrowsmith*, 320 F.2d at 221). As a result, it is entirely proper for the Court to decline to address the Rule 12(b)(6) motions until the issue of service of process is resolved.

As a result, reviewing the R & R *de novo* and fully considering Agent Gerbino's objections, the Court agrees with Magistrate Judge Tomlinson's recommendation that the Federal Defendants' motion to dismiss the claims against Agent Gerbino in his individual capacity be denied and that the *pro se* plaintiff be extended an additional thirty days to serve Agent Gerbino with a copy of the summons and complaint. If *pro se* plaintiff properly effectuates service within this time frame, then Agent Gerbino may renew his motion for dismissal under Rule 12(b)(6).

### B. Remaining Claims

Although *pro se* plaintiff has not objected to the R & R, and thus *de novo* review is not required, the Court has conducted a *de novo* review of the R & R in an abundance of caution. After reviewing the full record and the applicable law *de novo*, the Court also adopts Judge Tomlinson's report and recommendations relating to the motions to dismiss brought by the State, the Federal Defendants, the TJX defendants, Attorney Prime, and the Law Office of Elliot Schlissel.

### C. Leave to Re–Plead

In this case, *pro se* plaintiff has not requested leave to amend his complaint. However, Judge Tomlinson did address this issue in the R & R, and has recommended that leave to re-plead be denied. The Second Circuit has emphasized that "[a] *pro se* complaint is to be read liberally" and that a "court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a). However, leave to replead can be denied where it is clear that no amendments can cure the pleading deficiencies and any attempt to replead would be futile. *See Cuoco*, 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied").

As Judge Tomlinson points out, leave to amend is often futile when a claim is dismissed based on certain substantive grounds, including sovereign immunity (*see Dasrath v. Stony Brook Univ. Med. Ctr.*, 965 F.Supp.2d 261, 275 (E.D.N.Y.2013); *Temple v. N.Y.S. Dep't of Taxation & Fin.*, No. 11–CV–0759, 2012 WL 503618 at *6 (E.D.N.Y. Feb. 15, 2012)), the expiration of the statute of limitations (*see Apostolidis v. JP Morgan Chase & Co.*, No. 11–CV– 5664, 2012 WL 5378305, at * 9 (E.D.N.Y. Nov. 2, 2012)), or the lack of state action requisite for a Section 1983 claim (*see Peterec–Tolino v. New York*, 364 Fed.Appx. 708, 711 (2d Cir.2010) (affirming district court's *sua sponte* dismissal of § 1983 claims without leave to amend because,

*inter alia,* certain defendants were not state actors and "[a]ny amendment would be futile")); *Shorter v. Rice,* No. 12–CV–0111 (JFB)(ETB), 2012 WL 1340088, at *5 (E.D.N.Y. Apr. 10, 2012) (denying leave to amend because "plaintiff does not have any possibility of asserting a plausible Section 1983 claim . . . because of the lack of state action as to the defendant"); *Wilson v. Wilson–Polson,* No. 09 Civ. 9810(PGG), 2010 WL 3733935, at *10 (S.D.N.Y.Sept. 23, 2010) (leave to amend unwarranted because, *inter alia,* plaintiff could not allege state action under Section 1983); *Contes v. City of New York,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at *11 (S.D.N.Y. July 14, 1999) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to § 1983."). In this case, the claims against the State, the Secret Service, and Agent Gerbino in his official capacity were dismissed on sovereign immunity grounds; the claims against the TJX Defendants were dismissed as time-barred; and the claims against Attorney Prime and the Law Office of Elliot Schlissel were dismissed for failure to show state action. As a result, Judge Tomlinson recommends dismissal of all of the federal claims, with the exception of the claims against Agent Gerbino in his individual capacity, without leave to replead. The Court agrees with Judge Tomlinson and finds that any attempt to amend the complaint in this case would be futile, and as a result, dismissal without leave to re-plead is appropriate.

## IV. CONCLUSION

Having conducted a *de novo* review of Judge Tomlinson's findings, and having considered Agent Gerbino's objections, the Court adopts the analysis and recommendations in the thorough and well-reasoned R & R in their entirety. Accordingly, IT IS HEREBY ORDERED that: (1) the motion to dismiss brought by the State is GRANTED and plaintiff's claims against the State are dismissed with prejudice; (2) the motion to dismiss by the Federal Defendants is (a) GRANTED with respect to plaintiff's claims against the Secret Service and Agent Gerbino in his official capacity and those claims are dismissed with prejudice, and (b) DENIED with respect to plaintiff's claims against Agent Gerbino in his individual capacity, and that plaintiff is granted 30 days to serve the summons and complaint upon Agent Gerbino; (3) the motion to dismiss by the TJX Defendants is GRANTED and the plaintiff's federal claims against the TJX Defendants are dismissed with prejudice; (4) the motion to dismiss by Attorney Prime is GRANTED and plaintiff's federal claims against him are dismissed with prejudice; (5) the motion to dismiss by the Law Office of Elliot Schlissel is GRANTED and plaintiff's federal claims against that firm are dismissed with prejudice; and (6) plaintiff's state law claims against the TJX Defendants, Attorney Prime, and the Law Office of Elliot Schlissel are dismissed without prejudice.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

A. KATHLEEN TOMLINSON, United States Magistrate Judge:

### I. *PRELIMINARY STATEMENT*

*Pro se* Plaintiff Malek Harrison ("Plaintiff") brings this 42 U.S.C. § 1983 civil rights action alleging violations of his Fourth, Fifth, Sixth and Fourteenth Amendment rights based on his arrest and prosecution in state court for criminal possession of a forged instrument. The following defendants have moved to dismiss the claims asserted against them in the Complaint: (1) State of New York ("the State"); (2) United States Secret Service ("the Secret Service") and United States

Secret Service Agent Joseph Gerbino ("Agent Gerbino") (collectively, "the Federal Defendants"); (3) The TJX Companies, Inc., TJX Marmaxx (collectively, "TJX"), Nils Renner ("Renner"), and Christine Grimaudo ("Grimaudo") (collectively, "the TJX Defendants"); and Plaintiff's two former attorneys, (4) The Law Office of Elliot Schlissel ("the Schlissel Firm") and (5) Geoffrey Prime ("Attorney Prime" or "Prime"). *See* DE 13, 14, 23, 29, and 47.[1] Judge Bianco referred the motions to this Court for a Report and Recommendation. DE 51. Based upon a thorough review of the Complaint, the arguments advanced by the parties in their written submissions, and the applicable case law, the Court respectfully recommends to Judge Bianco that: (1) the motion to dismiss by the State of New York be GRANTED; (2) the motion to dismiss by the Federal Defendants be GRANTED, in part, as to Plaintiff's claims against the Secret Service and Agent Gerbino in his official capacity, and DENIED, in part, as to Plaintiff's claims against Agent Gerbino in his individual capacity, and that Plaintiff be granted 30 days to serve the Summons and Complaint upon Agent Gerbino; (3) the motion to dismiss by the TJX Defendants be GRANTED; (4) the motion to dismiss by the Schlissel Firm be GRANTED; and (5) the motion to dismiss by Attorney Prime be GRANTED.

## II. RELEVANT FACTUAL BACKGROUND

The following information has been derived from the Complaint and generally pertains only to the defendants who have moved to dismiss the Complaint. All facts alleged by the Plaintiff are assumed to be true for purposes of deciding a motion to dismiss and are construed in a light most favorable to the Plaintiff as the non-moving party. *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp.,* 570 F.3d 471, 475 (2d Cir.2009); *Matthews v. City of N.Y.,* 889 F.Supp.2d 418, 425 (E.D.N.Y.2012).

### A. Allegations Against the TJX Defendants

On January 12, 2011, Grimaudo was working as a cashier at Marshalls department store in Elmont, New York when she was handed nine counterfeit $100 bills for three separate purchases. Compl. ¶ 24; *see id.* ¶ 14. Renner, who was then working as the National Task Force Investigator for the TJX Marmaxx Group, conducted an investigation of the incident and eventually contacted defendant Detective Ronald Rispoli ("Detective Rispoli") of the Nassau County Police Department's Crimes Against Property ("CAP") Squad. *Id.* ¶ 23. Renner gave a statement to Detective Rispoli ("the Statement of Nils Renner") in which he mentioned an "anonymous Marshalls employee" who allegedly led Renner to identify Plaintiff as the person who used the counterfeit currency. *Id.* ¶¶ 23–25.

The Complaint asserts that both Renner and Grimaudo conspired with Detective Rispoli to deny Plaintiff's constitutional rights by intentionally and falsely implicating him in the alleged crime at Marshalls. *See id.* ¶¶ 13, 14, 23, 24. Specifically, Plaintiff contends that Renner "conspired with an 'anonymous Marshalls employee' and Detective Ronald Rispoli to introduce a falsified complaint identifying Plaintiff as the perpetrator." *Id.* at ¶ 23; *see id.* ¶ 13. Plaintiff similarly alleges that Grimaudo "conspired with Detective Ronald Rispoli to racially profile and intentionally and falsely identify the Plaintiff as the perpe-

---

1. The Nassau County Defendants have not moved to dismiss the Complaint and have filed an Answer. *See* DE 30.

trator[ ] who handed her nine (9) counterfeit 100 dollar bills ... on January 11, 2011." *Id.* ¶ 24; *see id.* ¶ 14. According to the Complaint, Grimaudo "failed to identify the counterfeit currency at the time of the transaction" and "later identified Plaintiff as a way of removing suspicion from herself and her co-workers." *Id.* ¶ 24. The Complaint notes that "the Court would have to believe" that, although Grimaudo "did not identify the bills as counterfeit," she was able to identify Plaintiff "on February 16, 2011, well over a month after the alleged commission of the crime." *Id.* Plaintiff therefore asserts that "Grimaudo deliberately participated in a conspiracy to deny his constitutional rights by racially profiling him and ... making a knowingly false identification, which led directly to his arrest." *Id.*

The Complaint further alleges that TJX, as the employer of Renner, Grimaudo, and the "anonymous Marshalls employee" mentioned in the Statement of Nils Renner, "foster[ed] an environment whereby its employees ... were encouraged and/or permitted to racially profile Black males in its stores." *Id.* ¶ 25. The Complaint asserts that TJX's "actions or inactions led to a denial of Plaintiff's constitutional rights not to be racially profiled and falsely charged in the commission of [a] crime by the complicit actions of its employees." *Id.* Plaintiff therefore maintains that TJX must "bear the brunt of the responsibility for the actions of its employees and the harm caused to him as a result of his false arrest and malicious criminal prosecution." *Id.*

### B. Allegations Against Agent Gerbino

On February 17, 2011, "over one (1) month after the alleged crime was committed," Plaintiff was arrested by Detective Rispoli and two other NCPD detectives also named in the instant Complaint. *Id.* ¶ 19. Plaintiff alleges that his arrest was "unlawful" and that, "[a]ccording to police reports," Agent Gerbino assisted both with the investigation that led to his arrest as well as the arrest itself. *Id.* Plaintiff asserts that "[t]hese officials conspired to falsify a complaint, namely 'the Statement of Nils Renner,' to identify and arrest [him]" for allegedly using counterfeit currency. *Id.*

### C. Allegations Against The Schlissel Firm

Plaintiff was charged with seven felony counts of criminal possession of a forged instrument pursuant to New York Penal Law § 170.30. *See id.* ¶ 19. After his arrest, Plaintiff retained the Schlissel Firm to represent him in his criminal proceedings. *See id.* ¶ 26. However, on October 12, 2012, the Schlissel Firm moved to be relieved as counsel. *See id.* Ultimately, that motion was successful and the Schlissel Firm was relieved as Plaintiff's counsel. *See id.*

The Complaint alleges that the Schlissel Firm violated Plaintiff's constitutional rights through "a deliberate denial of effective assistance of counsel and [by] filing motion(s) and replies with the court, which contained false and misleading information, including blatant falsehoods regarding money owed and services rendered." *Id.* ¶ 18 (internal quotation marks omitted). Specifically, the Complaint asserts that the firm "collected $4,240 from Plaintiff and simply made hollow appearances, while continuously demanding an additional $10,000 to take the matter to trial." *Id.* ¶ 26. According to the Complaint, the firm "offer[ed] no relevant strategy and refus[ed] to effectively provide pretrial motions aimed at assisting [its] client." *Id.* The Complaint further alleges that the firm, in moving to be relieved as counsel,

made "falsified claims" about monies owed by Plaintiff to the firm. *See id.* These actions allegedly "prejudiced the Plaintiff not only by prolonging the case through unethical withdrawal, but [by] destroy[ing] Plaintiff's confidence in the integrity of the legal profession." *Id.*

### D. Allegations Against Attorney Prime

The Complaint alleges that after the Schlissel Firm was relieved as counsel, "Plaintiff was then represented by Legal Aid." *Id.* ¶ 21. However, on the morning of February 4, 2013, the day Plaintiff's criminal case was set for trial, "a Legal Aid staffer" told Plaintiff that "her office could no longer represent him due to a conflict-of-interest involving someone from Marshalls' Loss–Prevention Department and the decision had already been made for the assignment of counsel from the Assigned Counsel Defender Plan." *Id.* This "impromptu counsel switch," which Plaintiff believes "was out of the ordinary course of normal assignment protocol of the Assigned Counsel Defender Plan," resulted in the appointment of Attorney Prime as Plaintiff's counsel. *Id.*

According to the Complaint, Attorney Prime, who was formerly employed by Defendant Nassau County's Office of the District Attorney ("the DA's Office"), was "unlawfully handpick[ed]" by that office to be Plaintiff's assigned counsel as part of a "conspiracy ... to sabotage Plaintiff's [d]efense." *Id.* ¶¶ 19–21. Particularly, the Complaint alleges that Attorney Prime conspired with the DA's Office and Assistant District Attorney Jhounelle Cunningham ("ADA Cunningham") by refusing to subpoena Renner in connection with defending the criminal charges against Plaintiff. *Id.* at ¶ 20. According to the Complaint, Attorney Prime "vehemently refused" Plaintiff's multiple requests to call or subpoena Renner, telling Plaintiff that "he would NOT consider calling Nils Renner to testify in his case under any circumstances whatsoever." *Id.*[2] Plaintiff maintains that Prime's refusal to call Renner was "exceedingly negligent" and that "Attorney Prime refused to comply with [Plaintiff's] ... wishes because he was beholden to the Nassau County Office of the District Attorney and [ADA] Cunningham, whom bade him not to pursue this line of strategy, which would likely expose their hidden agenda to cover up the obvious police misconduct." *Id.* The Complaint further alleges that Prime, as the "hand-picked representative" of the DA's Office, "was willing to try to sabotage [Plaintiff's] case to assist in insulating his former employer Nassau County Office of the District Attorney, from being held accountable for malicious prosecution and covering up police misconduct." *Id.* ¶ 21; *see id.* ("Geoffrey Prime chose to employ a strategy that would not result in adverse consequences for his former employer and refused to pursue his client's superior strategy, which aimed to expose both the police and prosecutorial misconduct at trial.").[3]

---

**2.** The Complaint further alleges that "Prime blatantly lied about submitting an application to the presiding judge to obtain approval for compensation to obtain a private investigator to seek out Nils Renner and on several occasions told the Plaintiff that the private investigator could not find Mr. Renner." Compl. ¶ 22. "Plaintiff asserts that Mr. Prime never sought such approval nor did he ever hire any private detective to find Mr. Renner, as he continuously stated that he had no intention of ever calling Nils Renner, who Plaintiff was convinced was the key to obtaining a dismissal in the case." *Id.*

**3.** The Complaint further suggests that the alleged conspiracy between Attorney Prime and the DA's Office was motivated by race. *See* Compl. ¶¶ 21–22. Particularly, the Complaint states that "[t]he assumption was to assign a

The Complaint states that Attorney Prime filed one "omnibus" motion on Plaintiff's behalf on or around June 17, 2013. *Id.* However, because this motion "sought to remove the defense's only piece of evidence that would demonstrate police misconduct and eliminate Plaintiff's trial strategy of exposing that misconduct," Plaintiff moved on June 28, 2013 to have new counsel appointed to represent him. *Id.* Even though the judge in the underlying criminal proceeding apparently "tried to convince Plaintiff to allow Mr. Prime to continue as counsel ... [because] Mr. Prime was doing a 'good job' and doing all that he could to defend his client's best interest," Plaintiff's application was granted on or about August 12, 2013. *Id.* The criminal case against Plaintiff was later dismissed on October 21, 2013. *See id.*[4]

### III. CAUSES OF ACTION SET FORTH IN THE COMPLAINT

 Plaintiff brings this action pursuant to Section 1983 and seeks damages based on the Defendants' "individual and collective participation in (1) racial profiling (2) false arrest, (3) malicious prosecution, (4) corruption, (5) abuse of power, (6) conflict of interest, (7) insufficient and unethical representation by counsel, (8) legal malpractice and ( [9] ) the conspiracy to deny his constitutional right to a fair process and a fair trial." *Id.*, Compl. & Jury Demand. Taking the Complaint as a whole, the Court construes the pleading as raising the following federal claims against the various moving defendants: (1) false arrest, fabrication of evidence, and conspiracy against the Federal Defendants pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)[5]; (2) Section 1983 false arrest and conspiracy against the TJX Defendants; and (3) ineffective assistance of counsel against the Schlissel Firm and Attorney Prime which Plaintiff characterizes as Section 1983 claims. The Complaint also appears to assert New York State law claims for negligent supervision against TJX, and legal malpractice

prominent Black attorney and former Nassau County Assistant District Attorney, who would be most likely to gain the confidence of an unwitting Black client who wouldn't question his attorney's strategy, or the lack thereof, and accept a plea agreement," which Plaintiff ultimately refused to do. *Id.* ¶ 21; *see id.* ¶ 22 (alleging that "abuse and misconduct [by the DA's Office] continues to run rampant by targeting African American defendants without probable cause and even going as far as employing an unwitting defendant's legal counsel to assist them in obtaining any form of plea agreement that would insulate that office and the State of New York from any future civil action.").

4. The Complaint asserts that the DA's Office and ADA Cunningham brought a new criminal proceeding against Plaintiff on October 18, 2013, approximately two months after Attorney Prime's representation of Plaintiff ended. Compl. ¶ 22. Because the allegations related to this second criminal proceeding generally concern the conduct of the Nassau County Defendants, and do not attribute wrongdoing to Attorney Prime or any of the other moving defendants, the Court will not address them at this juncture.

5. A Section 1983 action "cannot lie against federal officers." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir.1991). Although Plaintiff brings this action pursuant to Section 1983 and does not reference *Bivens* in his Complaint, *see generally* Compl., the Court interprets Plaintiff's claims against the Federal Defendants as having been brought under *Bivens*, which is "the non-statutory federal counterpart of a suit brought pursuant to 42 U.S.C. § 1983 and is aimed at federal rather than state officials." *Isasi v. Heinemann*, No. 08–CV–5284, 2009 WL 159601, at *1 (E.D.N.Y. Jan. 22, 2009); *see Megna v. Food & Drug Admin.*, No. 08–CV–1435, 2009 WL 749900, at *4–*5 (E.D.N.Y. Mar. 17, 2009) *aff'd sub nom. Megna ex rel. Megna v. Food & Drug Admin.*, 377 Fed.Appx. 113 (2d Cir. 2010).

against the Schlissel Firm and Attorney Prime.

## IV. STANDARDS OF REVIEW

In this case, the Court is presented with three grounds which may warrant dismissal of the Complaint: lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1); insufficient service of process pursuant to Fed.R.Civ.P. 12(b)(5); and failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). The Court addresses the standard of review for each section of Rule 12(b) in turn.

### A. Rule 12(b)(1) Legal Standard

■■■■ "Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction." *Allen v. Mattingly*, No. 10 CV 0667, 2011 WL 1261103, at *5 (E.D.N.Y. Mar. 29, 2011), *aff'd*, 478 Fed.Appx. 712 (2d Cir.2012) (citations omitted); *see Gunn v. Minton*, —— U.S. ——, ——, 133 S.Ct. 1059, 1064, 185 L.Ed.2d 72 (2013); *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 397 (2d Cir.2009). Accordingly, a case must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000); *see Alston v. Sebelius*, No. 13–CV–4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014). When resolving a motion to dismiss under Rule 12(b)(1), "the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir.2014) (citing *Amidax Trading Grp. v. S W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir.2011) (per curiam)). The Court is not confined to the four corners of the complaint and may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits. *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir.2003)); *see Baur v. Comm'r of Social Sec.*, No. 10–CV–3781, 2011 WL 1877726, at *2 (E.D.N.Y. May 16, 2011). Moreover, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir.2005); *see Alston*, 2014 WL 4374644, at *5. "Although courts hold *pro se* complaints to less stringent standards than formal pleadings drafted by lawyers, *pro se* litigants still must establish subject matter jurisdiction to proceed in federal court." *Buch v. Farmingdale State Coll.*, No. 12–CV–1762, 2013 WL 789354, at *10 (E.D.N.Y. Mar. 4, 2013) (internal citation and quotation marks omitted) (citing *Torres v. Dep't of Homeland Sec.*, 441 Fed.Appx. 812, 812 (2d Cir. 2011)); *see also United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) ("[S]ubject matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived.").

### B. Rule 12(b)(5) Legal Standard

■■■■ "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir.2006) (internal quotation marks and citation omitted). "Rule 12(b)(5) authorizes dismissal of a complaint for insufficient service of process upon motion by a defendant made prior to the defendant's filing an answer." *Butler v. N.Y. City Dep't of Educ.*, No. 10–CV–5748, 2014 WL 5023507, at *2 (E.D.N.Y. Oct. 7, 2014). Similar to a mo-

tion to dismiss pursuant to Rule 12(b)(1), a court considering a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process may "look to matters outside the complaint to determine whether it has jurisdiction." *Garnett–Bishop v. N.Y. Cmty. Bancorp, Inc.*, No. 12–CV–2285, 2014 WL 5822628, at *10 (E.D.N.Y. Nov. 6, 2014); *see, e.g., Butler*, 2014 WL 5023507, at *2; *Jordan v. Forfeiture Support Assoc.*, 928 F.Supp.2d 588, 594 (E.D.N.Y. 2013). "[W]hen a defendant moves to dismiss under [R]ule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298–99 (2d Cir.2005); *see Butler*, 2014 WL 5023507; *Hertzner v. U.S. Postal Serv.*, No. 05–CV–2371, 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007). " 'If the court determines that service was insufficient, the court may, but is not required to, dismiss the action.' " *Nolan v. Cuomo*, No. 11 CV 5827, 2013 WL 168674, at *7 (E.D.N.Y. Jan. 16, 2013) (quoting *Sajimi v. City of N.Y.*, 2011 WL 135004, at *3 (E.D.N.Y. Jan. 13, 2011)) (internal alteration omitted); *accord Rankel v. Town of Somers*, 999 F.Supp.2d 527, 536 (S.D.N.Y. 2014) (quoting *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F.Supp.2d 382, 387 (S.D.N.Y.2002)).

## C. Rule 12(b)(6) Legal Standard

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.2005); *Buch*, 2013 WL 789354, at *10. The plaintiff must satisfy "a flexible 'plausibility standard.' " *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955) (internal citations omitted).

■ In addition, where, as here, a plaintiff is proceeding *pro se*, the complaint must be considered under a more lenient standard than that accorded "formal pleadings drafted by lawyers." *Bellamy v. Mt. Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *3 (S.D.N.Y. June 26, 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Therefore, a court must construe a *pro se* plaintiff's pleading broadly and interpret it to raise the strongest arguments that it suggests. *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145–46 (2d Cir.2002); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir.2008) (holding that, that when a plaintiff proceeds *pro se*, the district court "is obliged to construe his pleadings liberally" and noting that "the dismissal of a *pro se claim* as insufficiently pleaded is appropriate only in the most unsustainable of cases."). "However, mere conclusions of law or unwarranted deductions need not be accepted." *Alston,*

2014 WL 4374644, at *5 (internal quotation marks omitted).

## V. DISCUSSION

### A. Motion to Dismiss by The State of New York

The State of New York moves to dismiss the Complaint pursuant to Rule 12(b)(1) and 12(b)(6). *See* New York State Defendant's Memorandum of Law in Support of Its Motion to Dismiss the Complaint ("State Mem.") at 1. The State asserts that this Court lacks subject matter jurisdiction over Plaintiff's Section 1983 claims against the State based on the doctrine of sovereign immunity and, in any event, Plaintiff has not adequately pleaded a claim against the State for which relief could be granted. *See id.* Plaintiff has not filed opposition to the State's motion to dismiss. For the reasons explained below, the Court concludes that Plaintiff's claims against the State are barred by the Eleventh Amendment and must be dismissed for lack of subject matter jurisdiction.[6]

---

**6.** The State of New York asserts its sovereign immunity arguments in a motion to dismiss under Rule 12(b)(1), rather than Rule 12(b) (6). *See* State Mem. at 3. It is an open question in the Second Circuit whether claims of Eleventh Amendment sovereign immunity "should be viewed as raising a question of subject matter jurisdiction, and thus be evaluated under Rule 12(b)(1), or as an affirmative defense analyzed under Rule 12(b)(6)." *Garcia v. Paylock*, 13–CV–2868, 2014 WL 298593, at *2 n. 3 (E.D.N.Y. Jan. 28, 2014); *see Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir.2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit.") (citing *Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (stating that the question of whether "Eleventh Amendment immunity is a matter of subject matter jurisdiction" is one that "we have not decided")). This distinction can be "significant" because

"while [a district court] must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under [Rule] 12(b)(6), ... in adjudicating a motion to dismiss for lack of subject-matter jurisdiction [under Rule 12(b)(1) ], a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 (2d Cir.2007) (citations omitted).

Here, however, this distinction has no practical effect because the Court, in considering the State's sovereign immunity arguments, "has considered only the pleadings and the relevant state and federal law and has drawn all inferences in Plaintiff's favor." *Tiraco v. N.Y. State Bd. of Elections*, 963 F.Supp.2d 184, 191 n. 6 (E.D.N.Y.2013). Thus, the Court will consider the State's motion as having been properly made under Rule 12(b)(1). *Id.; cf. Garcia*, 2014 WL 298593, at *2 n. 3 (considering the State's sovereign immunity defense under Rule 12(b)(1) because "[t]he

### 1. Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens. *See, e.g., Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Hans v. Louisiana*, 134 U.S. 1, 10–11, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Moreover, "[a]s a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." *KM Enters., Inc. v. McDonald*, 518 Fed.Appx. 12, 13 (2d Cir.2013) (citing U.S. Const. amend. XI; *Alden v. Maine*, 527 U.S. 706, 727–28, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)).

While sovereign immunity "is not absolute," the Supreme Court "ha[s] recognized only two circumstances in which an individual may sue a State." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). First, "a State may waive its sovereign immunity by consenting to suit." *Id.* (citing *Clark v. Barnard*, 108 U.S. 436,

447–48, 2 S.Ct. 878, 27 L.Ed. 780 (1883)). Second, Congress may abrogate the sovereign immunity of the States by acting pursuant to a grant of constitutional authority. *Id.* (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)); *see Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).[7]

Neither of these exceptions applies in this case. Plaintiff brings this action against the State pursuant to Section 1983. *See* Compl. ¶ 1. It is well established that "New York State has not waived its sovereign immunity from Section 1983 claims." *Nolan*, 2013 WL 168674, at *7 (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39–40 (2d Cir.1977)); *see e.g., Mamot v. Bd. of Regents*, 367 Fed.Appx. 191, 192 (2d Cir. 2010) (summary order); *Dube v. State Univ. of New York*, 900 F.2d 587, 594–95 (2d Cir.1990) (holding that the Eleventh Amendment precludes an action under Section 1983 against SUNY, an integral part of the State of New York). Moreover, Congress did not abrogate that immunity when it enacted Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity[.]") (citing

---

Supreme Court has ... referred in dicta to Eleventh Amendment sovereign immunity as implicating subject matter jurisdiction") (citing *e.g. Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, ——, 131 S.Ct. 1632, 1638, 179 L.Ed.2d 675 (2011) ("[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State.")); *but see JTE Enters., Inc. v. Cuomo*, 2 F.Supp.3d 333 (E.D.N.Y.2014) (applying the Rule 12(b)(6) standard in analyzing the State's sovereign immunity arguments); *Nolan*, 2013 WL 168674, at *6 (same).

7. A third exception also exists under the *Ex parte Young* doctrine, which holds that the Eleventh Amendment does not bar a "suit against a state official when that suit seeks ... prospective injunctive relief." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Here, Plaintiff has neither sued a state official nor sought injunctive relief. Thus, the *Ex Parte Young* doctrine does not apply to Plaintiff's case.

*Quern v. Jordan,* 440 U.S. 332, 350, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).

For the foregoing reasons, the Court concludes that none of the exceptions to the State's sovereign immunity apply and Plaintiff's claims against New York State are therefore barred by the Eleventh Amendment. The State has also moved to dismiss pursuant to Rule 12(b)(6). *See* State Mem. at 1. However, because the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims against the State in the first instance, it need not consider whether the Complaint fails to state a claim against the State for which relief may be granted. *Brown v. Wells Fargo Bank, N.A.,* No. 13–CV–3258, 2014 WL 1875083, at *1 (E.D.N.Y. May 8, 2014); *see, e.g., Pivotal Payments, Inc. v. FVA Ventures, Inc.,* No. CV 11–5713, 2012 WL 3887360, at *3 (E.D.N.Y. July 30, 2012), *report and recommendation adopted,* No. 11–CV–5713, 2012 WL 3909739 (E.D.N.Y. Sept. 6, 2012); *Fridman v. Postmaster Gen., U.S. Postal Serv.,* No. CV–95–4049, 1996 WL 90543, at *2 (E.D.N.Y. Feb. 26, 1996). Accordingly, the Court respectfully recommends to Judge Bianco that the State's motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction be GRANTED.

## B. Motion to Dismiss By the Federal Defendants

The Federal Defendants bring their motion to dismiss the Complaint pursuant to Rule 12(b)(1),[8] 12(b)(5) and 12(b)(6). *See* Federal Defendants' Memorandum of Law In Support of Motion to Dismiss the [C]omplaint ("Fed. Mem.") at 1. The Federal Defendants argue that, as a threshold matter, Plaintiff's *Bivens* claims brought against the Secret Service and Agent Gerbino in his official capacity are barred by sovereign immunity and therefore must be dismissed. *See id.* at 7–8. The Federal Defendants further assert that the action must be dismissed as to Agent Gerbino in his individual capacity[9] pursuant to Rule 12(b)(5) because he was never served with the Complaint. *See id.* at 12. Finally, the Federal Defendants assert multiple grounds for dismissal based on Rule 12(b)(6), namely, that (1) Plaintiff's false arrest claims are time-barred by the three-year statute of limitations; (2) Plaintiff has failed to adequately allege unconstitutional misconduct on the part of Agent Gerbino; and (3) Agent Gerbino is entitled to qualified immunity. *See id.* at 5–12. Plaintiff has not opposed the Federal Defendants' motion. For the reasons explained below,

---

**8.** Although the Federal Defendants do not reference Rule 12(b)(1) as a grounds for their motion to dismiss, they argue that, to the extent Plaintiff has asserted claims against the Secret Service and Agent Gerbino in his official capacity, those claims are barred by the doctrine of sovereign immunity. *See* Fed. Mem. at 7–8. "[A] finding of sovereign immunity would deprive this [C]ourt of subject matter jurisdiction." *Dotson v. Griesa,* 398 F.3d 156, 177 (2d Cir.2005) (citing *e.g. Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94–96, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). Accordingly, the Court will construe the Federal Defendants' sovereign immunity arguments as being made pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**9.** The Complaint does not state whether Agent Gerbino is being sued in his official or individual capacity. *See generally* Compl. Under these circumstances, the Court may assume that the suit is brought against Agent Gerbino in his individual capacity. *See Brown v. Lindsay,* No. 08–CV–2182, 2010 WL 1049571, at *16 (E.D.N.Y. Mar. 19, 2010) (citing *Davis v. Cnty. of Nassau,* 355 F.Supp.2d 668, 675–76 (E.D.N.Y.2005)). However, because the Federal Defendants have also moved to dismiss Plaintiff's claims to the extent they have been brought against Agent Gerbino in his official capacity, the Court will address those arguments.

the Court concludes that (1) Plaintiff's claims against the Secret Service and Agent Gerbino in his official capacity are barred by sovereign immunity and must be dismissed for lack of subject matter jurisdiction; and (2) although Plaintiff failed to serve Agent Gerbino or show good cause for lack of service, he should be granted a discretionary extension to effectuate service upon Agent Gerbino in his individual capacity.

### 1. Federal Sovereign Immunity

It is well established that "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Such consent to suit "must be 'unequivocally expressed' in statutory text, and cannot simply be implied." *Adeleke v. United States,* 355 F.3d 144, 150 (2d Cir.2004) (citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)). Moreover, "[b]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994) (citing *FDIC v. Meyer,* 510 U.S. 471, 484–87, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). "*Bivens* authorizes suits against the responsible federal official, not against the government itself, and *Bivens*-type actions against the United States are . . . routinely dismissed for lack

of subject matter jurisdiction." *Keene Corp. v. United States,* 700 F.2d 836, 845 (2d Cir.1983).

Plaintiff seeks monetary damages against the Secret Service, a federal agency, and Agent Gerbino for allegedly violating his constitutional rights pursuant to Section 1983, which the Court construes as a *Bivens* claim. *See generally* Compl. "[A] *Bivens* claim against a federal agency is precluded, as an action against a federal agency is essentially a suit against the United States, and *Bivens* actions against the United States are barred under the doctrine of sovereign immunity." *Katsoulakis v. Astrue,* No. 10–CV–0081, 2011 WL 3877080, at *5 (E.D.N.Y. Aug. 31, 2011); *see, e.g., Robinson,* 21 F.3d at 510; *Urena v. Wolfson,* No. 09–CV–1107, 2010 WL 5057208, at *5 (E.D.N.Y. Dec. 6, 2010). Sovereign immunity also bars Plaintiff's *Bivens* claims to the extent they have been brought against Agent Gerbino in his official capacity. *See Robinson,* 21 F.3d at 510 (holding that *Bivens* action was "properly dismissed" against federal agency and individual federal defendants in their official capacities "for want of subject matter jurisdiction" based on sovereign immunity).

For these reasons, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's *Bivens* claims asserted against the Secret Service and Agent Gerbino in his official capacity. Consequently, the Court respectfully recommends to Judge Bianco that those claims be dismissed.[10]

---

10. The Court notes that, were the Court to consider Plaintiff's claims against the Federal Defendants as arising under Section 1983 rather than *Bivens,* dismissal would still be warranted because the United States has not waived its sovereign immunity from suit under Section 1983. *See Davis v. United States,* No. 03 CIV. 1800, 2004 WL 324880, at *10 (S.D.N.Y. Feb. 19, 2004); *Petrenko v. United States,* 859 F.Supp. 647, 649 (E.D.N.Y.1994) (citing *Ricca v. United States,* 488 F.Supp. 1317, 1325 (E.D.N.Y.1980)).

### 2. Insufficient Service of Process on Agent Gerbino

The Federal Defendants maintain that the claims asserted against Agent Gerbino in his individual capacity must be dismissed pursuant to Rule 12(b)(5) because he has never been served with the Complaint. *See* Fed. Mem. at 12. The Federal Defendants have not provided an affidavit from Agent Gerbino or other evidence to support their allegations of insufficient service. Plaintiff, meanwhile, has not opposed the Federal Defendants' motion to dismiss, nor has he otherwise established that he either adequately served Agent Gerbino or that he had good cause for failing to serve him.

Under Fed.R.Civ.P. 4(m), a plaintiff must serve a defendant within 120 days of the filing of the complaint. In order to serve a United States employee sued in an individual capacity, "a party must serve the United States and also serve the officer or employee." Fed.R.Civ.P. 4(i)(3). Failure to do so may result in dismissal of the action. *See Zapata v. City of N.Y.*, 502 F.3d 192, 196 (2d Cir.2007). "When a defendant has raised a challenge to the sufficiency of process under Rule 4(m), the plaintiff bears the burden of proving adequate service." *Matos v. City of N.Y.*, No. 10–CV–4558, 2012 WL 7160430, at *3 (E.D.N.Y. Dec. 3, 2012) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir.2010)).

Plaintiff commenced this action on February 26, 2014 and summonses were issued to the Federal Defendants that same day. *See* DE 1–DE 3. On March 5, 2014, Judge Bianco issued an Order directing that the Court would dismiss Plaintiff's action without prejudice if service was not made upon Defendants by June 26, 2014, as required by Rule 4(m), and Plaintiff "fail[ed]" to show good cause why such service has not been effected." DE 4. On July 22, 2014,

the United States Attorney's Office ("USAO") appeared on behalf of the Federal Defendants and filed a letter request for leave to move to dismiss the Complaint. DE 43. In the letter, copied to Plaintiff, the USAO informed the Court that "[t]o date, Federal Defendants have not been served and Plaintiff has not made any attempts to properly serve the Federal Defendants." *Id.* The Federal Defendants assert in their memorandum of law, filed August 23, 2014, that Agent Gerbino still has not been served pursuant to Rule 4(i)(3) and that Plaintiff has neither shown good cause for failing to comply with Rule 4(m)'s 120–day rule nor requested additional time from the Court to effectuate proper service. *See* Fed. Mem. at 12–14. Accordingly, the Federal Defendants argue that Plaintiff's claims against Agent Gerbino must be dismissed pursuant to Rule 12(b)(5). *See id.* at 14. As discussed above, the Federal Defendants have not included an affidavit or other evidence to support their request for dismissal based on insufficient service.

The Court notes at the outset that it will address the insufficient service of process issue because the Federal Defendants have raised it and "'the Court must first address the preliminary questions of service and personal jurisdiction'" before turning, if necessary, to the defendants' Rule 12(b)(6) arguments. *Hertzner*, 2007 WL 869585, at *3 (quoting *Mende v. Milestone Tech., Inc.*, 269 F.Supp.2d 246, 251 (S.D.N.Y.2003)); *see Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) ("[L]ogic compel[s] initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim."). However, the Court maintains that Judge Bianco's March 5, 2014 Order was clear in directing that this action be dismissed without prej-

udice if Plaintiff did not comply with Rule 4(m).

■■■ Turning to the merits of the motion, the Court finds that, as a preliminary matter, the Federal Defendants' failure to provide a sworn statement is not fatal to their Rule 12(b)(5) motion to dismiss. The omission of "a[ ] supporting affidavit that attests to the alleged deficiencies in plaintiff['s] service of process" may be grounds to deny a Rule 12(b)(5) motion if the movant's conclusory allegations do not specify the service provision the plaintiff failed to satisfy, *Koulkina v. City of N.Y.*, 559 F.Supp.2d 300, 312 (S.D.N.Y.2008), or the plaintiff provides evidence to rebut the movant's allegations. *See United States v. Jost*, 9 F.Supp.3d 303, 307 (W.D.N.Y.2014) (holding that "defendant's unsupported and uncorroborated statement [that she was never served] is insufficient to overcome the sworn affidavit relied upon by plaintiff"); *Griffin–Nolan v. Providence Wash. Ins. Co.*, 504 CV 1453, 2005 WL 1460424 at *3 (N.D.N.Y. June 20, 2005) (denying the defendants' motion to dismiss where "[t]he docket sheet contain[ed] four affidavits of service that indicate that each Defendant was served with the summons and the complaint," the "[p]laintiff's counsel ... filed an affidavit stating that Plaintiff personally served summonses and complaints for all Defendants upon Defendants' counsel," and the defendants "d[id] not address insufficiency of service of process in their reply memorandum of law"). These are not the circumstances presented here. The Federal Defendants stated both in their letter to Judge Bianco and their memorandum of law that Rule 4(i)(3) governed service upon Agent Gerbino and that Plaintiff failed to serve Agent Gerbino by June 26, 2014 as required by Rule 4(m) and the Court's March 5, 2014 Order. *See* DE 43; Fed. Mem. at 13–14. Although it appears Plaintiff was mailed a copy of these submissions, *see* DE 43, DE 47, as well as a copy of the Court's March 5, 2014 Order, *see* Elec. Order, Mar. 5, 2014, he has not provided proof of service upon Agent Gerbino.

Based on these circumstances, the Court finds that the Federal Defendants' challenge to the sufficiency of process pursuant to Rule 4(m) effectively shifted the burden of proof to Plaintiff to show that service was adequate. *See Matos*, 2012 WL 7160430, at *3. Plaintiff has neither alleged that he served Agent Gerbino with the Complaint nor offered evidence to show that service was effected within the 120–day time period specified by Rule 4(m). Accordingly, Plaintiff has not met his burden of proving that he properly served Agent Gerbino. *See generally id.*

Because Plaintiff has not shown that he complied with Rule 4(m)'s 120–day time period, "the question becomes whether the [C]omplaint must be dismissed against [Agent Gerbino] or whether [P]laintiff should be provided with an extension of time to effect proper service." *Nolan*, 2013 WL 168674, at *12 (quoting *Fileccia v. City of N.Y.*, 2011 WL 4975313, at *3 (E.D.N.Y. Sept. 23, 2011)) (internal quotation marks and alterations omitted). "Rule 4(m) permits the Court to dismiss an action if service is not made in a timely manner, but also provides that 'if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.' " *Id.* (quoting Fed.R.Civ.P. 4(m)); *see Matos*, 2012 WL 7160430, at *3. Here, Plaintiff has not made any attempt to show the existence of "good cause" for his failure to serve Agent Gerbino. In fact, he has not even responded to the Federal Defendant's motion to dismiss.

■■■ "Even in the absence of good cause, however, the court may, in its dis-

cretion, grant an extension." *Matos,* 2012 WL 7160430, at *3.

Courts have typically weighed four factors in determining whether to grant an extension of time absent good cause: '(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.' *Purzak v. Long Island Hous. Servs., Inc.,* No. 12–CV–1747, 2013 WL 5202711, at *5 (E.D.N.Y. Sept. 13, 2013) (quoting *Carroll v. Certified Moving & Storage, Co.,* 04 CV 4446, 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005)); *see, e.g. Walters v. Suffolk Cnty.,* No. 09–CV–556, 2014 WL 940734, at *4 (E.D.N.Y. Mar. 11, 2014); *Matos,* 2012 WL 7160430, at *3; *Hertzner,* 2007 WL 869585, at *4–8. The Court finds that the balance of these factors weigh in favor of granting Plaintiff a discretionary extension.

▮▮▮ As to the first factor, "courts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis." *Purzak,* 2013 WL 5202711, at *6 (quoting *Carroll,* 2005 WL 1711184, at *2) (internal quotation marks and alteration omitted). The Court notes that this rule generally applies where the original complaint was timely filed (if not properly served) and the court's dismissal without prejudice would bar the plaintiff from later refiling the complaint based on statute of limitations grounds. *See, e.g., Walters,* 2014 WL 940734, at *4; *Jordan,* 928 F.Supp.2d at 599; *Carroll,* 2005 WL 1711184, at *2. Here, the Federal Defendants argue that the three-year statute of limitations on

Plaintiff's false arrest claim against Agent Gerbino had *already* run by the time Plaintiff filed his Complaint on February 26, 2014. *See* Fed. Mem. at 4. However, the Federal Defendants assert this statute of limitations argument as an independent grounds for Rule 12(b)(6) dismissal of the Complaint, not as a factor weighing against a discretionary extension of Plaintiff's time to serve the Complaint. Moreover, some case law suggests that a discretionary extension may still be appropriate even where, as here, the defendant alleges that the plaintiff's claims were time-barred prior to the filing of the complaint. *See Morris v. Ford Motor Co.,* No. 07–CV–424S, 2009 WL 2448473, at *5 (W.D.N.Y. Aug. 7, 2009) (granting discretionary extension even though the defendant also moved to dismiss the complaint for failure to commence the action within the applicable statute of limitations); *cf. Purzak,* 2013 WL 5202711, at *8 n. 4 (granting a discretionary extension for the plaintiff to serve her first federal complaint and declining to address the defendants' claim that, because the plaintiff failed to properly serve the first federal complaint within the statute of limitations, her second federal complaint was untimely at the time of filing). Accordingly, the Court finds the first factor, while not dispositive, does weigh in Plaintiff's favor. *See Purzak,* 2013 WL 5202711, at *6.

▮▮▮ As to the second factor, the Court finds that the Federal Defendants had actual notice of the claim asserted in the Complaint. It is undisputed that the Federal Defendants ultimately received Plaintiff's pleadings "and in fact filed the instant motions to dismiss based on those pleadings." *Jordan,* 928 F.Supp.2d at 599 (E.D.N.Y.2013). Thus, this factor favors granting Plaintiff an extension.

As to the third factor, there is no evidence that the Federal Defendants have

attempted to conceal the absence of service of process. Significantly, the USAO brought the service issue to the Court's attention in its July 22, 2014 letter, copied to Plaintiff, seeking a pre-motion conference. *See* DE 43. This factor therefore does not favor granting Plaintiff a discretionary extension. However, this factor alone is not sufficient to offset other factors weighing in Plaintiff's favor. *See Purzak,* 2013 WL 5202711, at *7 (citing *Jordan,* 928 F.Supp.2d at 599 (granting extension even when defendant did not attempt to conceal the defect in service because "this factor alone does not offset the numerous reasons that support granting plaintiff additional time to correct service of process"); *Feingold v. Hankin,* 269 F.Supp.2d 268, 277 (S.D.N.Y.2003) (granting extension even when statute of limitations did not bar refiling of action and defendant had not tried to conceal ineffective service)).

Finally, as to the fourth factor, the Court finds that this factor favors Plaintiff because the Federal Defendants would not be prejudiced by extending the time within which Plaintiff may serve his pleadings on Agent Gerbino in conformity with the Federal Rules. *Jordan,* 928 F.Supp.2d at 599 ("Although defendant 'will be burdened with the obligation to defend this lawsuit if the extension is granted, that does not rise to the level of prejudice necessary to tip the balance of this factor in defendant's favor.' ") (quoting *Lumbermens Mut. Cas. Co. v. Dinow,* No. 06–CV–3881, 2009 WL 2424198, at *4 (E.D.N.Y. Aug. 6, 2009)) (alterations omitted); *see also Walters,* 2014 WL 940734, at *4 (finding that the fourth factor favored the plaintiff where the defendants "ha[d] not shown prejudice" and merely argued that the plaintiff "is not likely to succeed on the merits."); *Purzak,* 2013 WL 5202711, at *7 (finding no prejudice even though the defendants "would be forced to defend this action even

though the statute of limitations has expired").

■■■ On balance, the Court concludes that the foregoing factors militate against dismissal of the Complaint and weigh in favor of granting Plaintiff—a *pro se* litigant—a final opportunity to effectuate proper service on Agent Gerbino. Accordingly, the Court respectfully recommends to Judge Bianco that Plaintiff be granted one final opportunity of 30 days to serve the Summons and Complaint upon Agent Gerbino, if Plaintiff chooses to do so. In light of this determination, the Court need not address the alternative grounds for dismissal advanced by the Federal Defendants pursuant to Rule 12(b)(6). *See generally Conway v. Am. Red Cross,* No. CV 10–1859, 2010 WL 4722279, at *6 (E.D.N.Y. Nov. 15, 2010).

For the foregoing reasons, the Court respectfully recommends to Judge Bianco that the motion to dismiss by the Federal Defendants be GRANTED, in part, pursuant to Rule 12(b)(1), by dismissing Plaintiff's claims against the Secret Service and Agent Gerbino in his official capacity, and be DENIED, in part, as to Plaintiff's claims against Agent Gerbino in his individual capacity. The Court further recommends that Plaintiff be granted a final period of 30 days within which to serve the Summons and Complaint upon Agent Gerbino.

### C. Motion to Dismiss by the TJX Defendants

The TJX Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6). *See generally* Memorandum of Law in Support of TJX Defendants' Motion to Dismiss ("TJX Mem.") at 1. Primarily, these defendants assert that, as private actors, they are not subject to suit under Section 1983, and Plaintiff has not suffi-

ciently alleged that they acted under color of state law for purposes of that statute. *See id.* at 5–7. The TJX Defendants further argue that, in any event, Plaintiff's false arrest claims asserted against them are time-barred by Section 1983's three-year statute of limitations. *See id.* at 8.[11] In his opposition, Plaintiff does not dispute that the TJX Defendants are private actors. Rather, Plaintiff argues that he has adequately alleged the existence of a joint activity and conspiracy between the TJX Defendants and Detective Rispoli to establish state action under Section 1983. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint Against Them ("Pl.'s Opp. to TJX Mot.") ¶ 4 [DE 38]. Plaintiff also maintains that his false arrest claims are not time-barred because the statute of limitations only began to run once his criminal case was dismissed in October 2013. *See id.* ¶ 6. For the reasons set forth below, the Court concludes that (1) Plaintiff's allegations of conspiracy and joint action between Detective Rispoli and Grimaudo and TJX are insufficient to survive a motion to dismiss; and (2) Plaintiff has adequately alleged, through his submissions on this motion, that Renner engaged in a joint activity and conspiracy with Rispoli; but (3) in any event, Plaintiff's Section 1983 claims against all the TJX Defendants are time-barred.

### 1. Section 1983 State Action Requirement

■ Section 1983 provides that:

[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia,* —— U.S. ——, 132 S.Ct. 1657, 1661, 182 L.Ed.2d 662 (2012). Thus, to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was "committed by a person acting under the color of state law." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010); *see Ahlers v. Rabinowitz,* 684 F.3d 53, 60 (2d Cir.2012); *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323 (2d Cir.2002); *see also Rehberg v. Paulk,* —— U.S. ——, 132 S.Ct. 1497, 1501–02, 182 L.Ed.2d 593 (2012).

■ " 'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.' " *Fabrikant v. French,* 691 F.3d 193, 206 (2d Cir.2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n,* 396 F.3d 178, 186 (2d Cir. 2005)). "[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.' " *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119

---

11. The TJX Defendants do not address the state law claim for negligent supervision which Plaintiff appears to have alleged against TJX. However, as discussed later in this Report and Recommendation, the Court recommends that Judge Bianco decline to exercise supplemental jurisdiction over any state law causes of action alleged in the Complaint.

S.Ct. 977, 143 L.Ed.2d 130 (1999) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)) (emphasis omitted).

 The conduct of private persons or entities, "no matter how discriminatory or wrongful," generally does not constitute state action and therefore cannot form the basis of a Section 1983 claim. *Id.; see Hooda v. Brookhaven Nat'l Lab.,* 659 F.Supp.2d 382, 393 (E.D.N.Y.2009) (Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'") (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 837, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)). However, "state action may be found when 'there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Abdullahi v. Pfizer, Inc.,* 562 F.3d 163, 188 (2d Cir.2009) (*quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (internal quotation marks omitted)). Such a nexus may exist where "the private actor was a willful participant in joint activity with the State or its agents" or where the private actor "conspire[d] with a state official to violate the plaintiff's constitutional rights." *Young v. Suffolk Cnty.,* 922 F.Supp.2d 368, 385 (E.D.N.Y.2013) (internal quotation marks omitted); *see, e.g., Caldwell v. Myer,* No. 14–CV–5383, 2015 WL 428063, at *3 (E.D.N.Y. Jan. 30, 2015) (citing *Ciambriello,* 292 F.3d at 323–24); *Shabtai v. Levande,* No. 13 CV 4580, 2013 WL 6116850, at *3 (E.D.N.Y. Nov. 20, 2013) (citing *e.g. Filarsky,* 132 S.Ct. at 1661–62; *Briscoe v. LaHue,* 460 U.S. 325, 330 n. 7, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)); *Anilao v. Spota,* 774 F.Supp.2d 457, 498 (E.D.N.Y.2011) (quoting *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980)). "The concepts of acting 'joint-

ly' or in 'conspiracy with' state actors are intertwined ... [and e]ven if considered as conceptually separate theories, both require the pleading of facts sufficient to show something more than conclusory allegations." *Stewart v. Victoria's Secret Stores, LLC,* 851 F.Supp.2d 442, 445 (E.D.N.Y.2012) (internal citations omitted); *see generally Ciambriello,* 292 F.3d at 323–24.

 "'To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law.'" *Anilao,* 774 F.Supp.2d at 498 (quoting *Bang v. Utopia Rest.,* 923 F.Supp. 46, 49 (S.D.N.Y.1996)); *see Lynch v. Southampton Animal Shelter Found. Inc.,* 971 F.Supp.2d 340, 351 (E.D.N.Y. 2013). In other words, "[j]oint action with a state official can be found only if it is shown that the private individual acted in 'wilful collaboration' with a state actor to deprive the plaintiff of a federal right." *Stewart,* 851 F.Supp.2d at 445 (citing *Bacquie v. City of N.Y.,* No. 99–CV–10951, 2000 WL 1051904, at *1 (S.D.N.Y. July 31, 2000)). "[C]onclusory allegations" or "naked assertions" of a joint activity are not sufficient to survive a motion to dismiss. *Id.* (internal quotation marks omitted); *see Ratner v. Robinson,* No. 13–CV– 6278, 2014 WL 4659308, at *2 (E.D.N.Y. Sept. 16, 2014) ("A 'conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.'") (quoting *Lee v. Law Office of Kim & Bae, P.C.,* 530 Fed.Appx. 9, 9 (2d Cir.2013) (internal quotation marks omitted)). Rather, the "pleadings asserting joint activity must allege 'specific facts tending to show agreement and concerted action.'" *Stew-*

*art,* 851 F.Supp.2d at 445 (quoting *Bacquie,* 2000 WL 1051904, at *1).

▓▓▓▓ It is well established that "the summoning of police officers or the provision of information to police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of Section 1983." *Young,* 922 F.Supp.2d at 385 (citing *e.g. Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 272 (2d Cir.1999)); *see Stewart,* 851 F.Supp.2d at 446 ("Merely providing information to law enforcement, even if that information is false or mistaken, does not render the supplier of information a state actor.") (citing *Luciano v. City of N.Y.,* No. 09–CV–359, 2009 WL 1953431, at *2 (S.D.N.Y. July 2, 2009); *Johns v. Home Depot U.S.A., Inc.,* 221 F.R.D. 400, 405 (S.D.N.Y.2004)); *Anilao,* 774 F.Supp.2d at 498. "Moreover, a private party's motivation is irrelevant to the determination of whether that private party acted under color of state law." *Young,* 922 F.Supp.2d at 385 (citing *Kash v. Honey,* 38 Fed.Appx. 73, 75–76 (2d Cir.2002) (finding no state action by private lawyer who plaintiff alleged "maliciously, for purpose or purposes personal to him, including the purpose of penalizing [plaintiff] for exercising his First Amendment rights . . . falsely charged [plaintiff] in an accusatory instrument"); *Shapiro v. City of Glen Cove,* No. CV 03–0280, 2005 WL 1076292, at *7 (E.D.N.Y. May 5, 2005) ("In any event, whatever motivation [a private party] may have had in calling in the complaint and alerting the media is irrelevant to the question of whether she was a state actor.")); *see Estes–El v. Dumoulin,* No. 6–CV–2528, 2012 WL 1340805, at *4 (E.D.N.Y. Apr. 18, 2012). "[I]t is only when a private actor takes a more active role and jointly engages in action with state actors[ ] that he will be found to have

acted under color of state law for purposes of Section 1983." *Young,* 922 F.Supp.2d at 385 (citing *Lugar,* 457 U.S. at 942, 102 S.Ct. 2744; *Adickes,* 398 U.S. at 152, 90 S.Ct. 1598); *see Stewart,* 851 F.Supp.2d at 446 ("Where, on the other hand, a private citizen has done more than simply call police and provide sworn information, a claim of state action may be sustained."). "In such cases, facts showing concerted action must be alleged, even at the pleading stage, to avoid dismissal." *Stewart,* 851 F.Supp.2d at 446.

▓▓▓▓ "Alternatively, to demonstrate that a private party defendant was a state actor engaged in a conspiracy with other state actors under § 1983, a plaintiff must allege (1) an agreement between the private party and state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Anilao,* 774 F.Supp.2d at 499; *see Caldwell,* 2015 WL 428063, at *3; *Young,* 922 F.Supp.2d at 385; *Estes–El,* 2012 WL 1340805, at *5. "Claims alleging conspiracies to violate civil rights are held to a heightened pleading standard." *Brewster v. Nassau Cnty.,* 349 F.Supp.2d 540, 547 (E.D.N.Y.2004) (citing *Julian v. N.Y. City Transit Auth.,* 857 F.Supp. 242, 252 (E.D.N.Y.1994)). This heightened pleading standard is necessary because

> [t]he need to guard against the use of conclusory allegations of conspiracy in the context of Section 1983 lawsuits against private actors is particularly compelling. If a plaintiff could overcome a motion to dismiss simply by alleging in a conclusory fashion a 'conspiracy' between private actors and state actors, these private actors would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a 'plausible' conspiracy

claim. As the Second Circuit has emphasized, these conspiracy claims are 'so easily made and can precipitate such protracted proceedings with such disruption of governmental functions' that 'detailed fact pleading is required to withstand a motion to dismiss' them. *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981). *Nealy v. Berger*, No. 08–CV–1322, 2009 WL 704804, at *6 (E.D.N.Y. Mar. 16, 2009); *see, e.g., Stewart*, 851 F.Supp.2d at 445–46; *Brewster*, 349 F.Supp.2d at 547. Thus, "[v]ague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed." *Anilao*, 774 F.Supp.2d at 499; *see, e.g., Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *Brewster*, 349 F.Supp.2d at 547 ("'A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'") (quoting *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983)). Although "places and dates of meetings need not be pled with particularity," the complaint "must set forth a plausible theory of agreement and concerted action." *Stewart*, 851 F.Supp.2d at 445 (citing *McIntyre v. Longwood Cent. Sch. Dist.*, 2008 WL 850263 *11 (E.D.N.Y. 2008)); *see Anilao*, 774 F.Supp.2d at 499.

In his Complaint, Plaintiff alleges that Renner and Grimaudo "conspired" with Detective Rispoli to falsely identify Plaintiff as the perpetrator of the alleged crime involving the use of counterfeit currency at Marshalls. *See* Compl. ¶¶ 13–14; 23–24. Plaintiff further asserts that negligence on the part of TJX "led to a denial of Plaintiff's constitutional rights not to be racially profiled and falsely charged in the commission of [a] crime by the complicit actions of its employees." *Id.* ¶ 25.

■ As a preliminary matter, the Court notes that Plaintiff does not allege in the Complaint or his opposition to the motion to dismiss that TJX engaged in a joint activity or conspired with a state actor to deny Plaintiff's constitutional rights. *See id.* Plaintiff merely asserts that TJX must be held liable for the conduct of its employees—namely, Renner, Grimaudo, and the "anonymous Marshalls employee"—which allegedly led to his false arrest. *See id.* Accordingly, Plaintiff has not established that TJX acted under the color of state law for the purposes of Section 1983 claims.

■ With regard to Renner and Grimaudo, Plaintiff has not alleged adequate facts in the Complaint to support his allegations that these private actors engaged in a conspiracy with Detective Rispoli. Plaintiff asserts that Renner conspired with Detective Rispoli "to introduce a falsified complaint identifying Plaintiff as the perpetrator" of the alleged crime, and that Grimaudo similarly conspired with Rispoli to "falsely identify the Plaintiff as the perpetrator." *Id.* ¶¶ 24–25. However, the fact that a private actor provided false or mistaken information to law enforcement "does not render the supplier of information a state actor." *Stewart*, 851 F.Supp.2d at 446; *see, e.g., Anilao*, 774 F.Supp.2d at 498. Thus, even if Renner and Grimaudo did provide false information to Detective Rispoli implicating Plaintiff in the crime, as Plaintiff alleges in his Complaint, this conduct alone is not sufficient to constitute state action. Similarly, because a private actor's motivation is irrelevant to the determination whether the individual acted under color of state law, *Young*, 922 F.Supp.2d at 385, Plaintiff's allegations that Renner and Grimaudo "deliberately" misidentified him, and that Grimaudo did so "as a way of removing suspi-

cion from herself and her co-workers," Compl. ¶ 23–24, do not suffice to establish that these private actors engaged in a joint activity with Detective Rispoli.

Critically absent from the Complaint are any specific facts identifying a "willful collaboration" between Renner, Grimaudo, and Rispoli to deny Plaintiff's constitutional rights, *Stewart*, 851 F.Supp.2d at 445, or an "overt act" or the "agreement" between the private actors and state actor forming the conspiracy. *See, e.g., Young*, 922 F.Supp.2d at 385. As discussed above, such facts must be alleged in the Complaint in order to survive a motion to dismiss. *Stewart*, 851 F.Supp.2d at 446; *see Nealy*, 2009 WL 704804, at *6 (noting that "detailed fact pleading is required to withstand a motion to dismiss" allegations of conspiracy in the context of Section 1983 lawsuits against private actors) (internal quotation marks omitted). Rather, Plaintiff's Complaint merely contains vague and conclusory allegations that Renner and Grimaudo participated in a conspiracy with Detective Rispoli to intentionally deny his constitutional rights. *See, e.g., Ciambriello*, 292 F.3d at 324; *Brewster*, 349 F.Supp.2d at 547. These allegations fall short of the facts necessary to support a claim of joint collaboration or conspiracy

with a state actor so as to impose individual liability.

 That said, if the Court considers allegations in the Complaint in conjunction with the allegations and evidence Plaintiff presents in opposition to the TJX Defendants' motion, Plaintiff appears to have adequately made out a claim of conspiracy with regard to Renner. In his opposition, Plaintiff asserts for the first time [12] that Detective Rispoli and Renner "together … manufactured the scenario of a call coming from 'an anonymous Marshalls employee'" and "then draft[ed] this 'Statement of Nils Renner' in a poor attempt to substantiate a basis for Plaintiff's arrest." Pl.'s Opp. to TJX Mot. ¶ 4. Plaintiff further alleges that, because the account of the alleged crime contained in Detective Rispoli's police report is nearly identical to the Statement of Nils Renner, Rispoli must have "manufactured the information" in the Statement, conveyed that information to Renner, "and then presented [it] as if … Renner had offered it from his own internal investigation." *Id.* ¶ 3. To substantiate these claims, Plaintiff has attached to his opposition papers the "Statement of Nils Renner" and Detective Rispoli's police report. *See id.*, Ex. A & Ex. B.

Considering these additional allegations in conjunction with the Complaint, the

---

12. In general, a party is not permitted to use its reply to a dispositive motion as a vehicle for amending its complaint. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998). "[A]lthough courts afford *pro se* plaintiffs a fair measure of procedural latitude, this latitude typically does not extend so far as permitting a plaintiff to supplement the claims in his complaint with additional allegations in his motion papers." *Salemo v. Murphy*, No. 11 CIV. 2525, 2012 WL 4714765, at *2 (S.D.N.Y. Sept. 27, 2012) (citing *Shah v. Helen Hayes Hosp.*, 252 Fed.Appx. 364, 366 (2d Cir.2007)); *see Ratner*, 2014 WL 4659308, at *3 n. 2 (declining to consider additional evidence and allegations related to the Section 1983 private actor-conspiracy the-

ory raised for the first time in the plaintiff's opposition brief). However, because Plaintiff's supplementary allegations and evidence relate to claims he made in the Complaint— *i.e.*, that the Statement of Nils Renner was "manufactured" by Detective Rispoli—the Court will consider them in determining whether Plaintiff has adequately alleged state action by Renner. *See Miller v. Cnty. of Nassau*, No. 10–CV–3358, 2013 WL 1172833, at *6 (E.D.N.Y. Mar. 19, 2013) (considering "failure to train claim" raised for the first time in opposition to summary judgment because, construing the complaint liberally in favor of the plaintiff, the claim was related to one allegation in the complaint).

Court concludes that Plaintiff has, by a narrow margin, provided a sufficient factual basis for his allegations of conspiracy and joint action between Renner and Detective Rispoli. With his supplementary claims, Plaintiff has alleged that Renner did not merely elicit an exercise of state authority, but that he joined and participated in the exercise of that authority by agreeing with Detective Rispoli to fabricate evidence for the purpose of effectuating Plaintiff's false arrest. *See Anilao,* 774 F.Supp.2d at 501. Accordingly, the Court concludes that Plaintiff has sufficiently pled that Renner acted under the color of state law for the purposes of Section 1983, and Plaintiff's Complaint against Renner need not be dismissed on that basis.

In sum, the Court concludes that Plaintiff's allegations against TJX and Grimaudo are not sufficient to plead state action by these defendants. For these reasons, the Court respectfully recommends to Judge Bianco that Plaintiff's Section 1983 claims against TJX and Grimaudo be dismissed. Plaintiff has met the state action threshold with regard to Renner. As the Court explains below, however, Plaintiff's Section 1983 claims against all the TJX Defendants, including Renner, are time-barred.

### 2. *Statute of Limitations*

 The statute of limitations for claims brought pursuant to Section 1983 is determined by state law, and in New York State, the statute of limitations for actions brought pursuant to Section 1983 is three years. *Owens v. Okure,* 488 U.S. 235, 249–51, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (holding that the most appropriate statute of limitations in a § 1983 action is found in the "general or residual [state] statute [of limitations] for personal injury actions"); *Shomo v. City of N.Y.,* 579 F.3d 176, 181 (2d Cir.2009) ("The statute of limitations

for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law."). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall,* 254 F.3d 36, 41 (2d Cir.2001) (quoting *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994)); *see also Shomo,* 579 F.3d at 181 ("A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm.") (internal quotation marks omitted); *Rene v. Jablonski,* No. 08 Civ. 3968, 2009 WL 2524865, at *5 (E.D.N.Y. Aug. 17, 2009) ("Federal law governs the question of when a Section 1983 claim accrues. Under federal law, 'the time of accrual is that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action.'") (quoting *Covington v. City of N.Y.,* 171 F.3d 117, 121 (2d Cir.1999) (alterations and citations omitted)). The statute of limitations period may be extended if the claimant "is under a disability because of infancy or insanity at the time the cause of action accrues." N.Y. C.P.L.R. 208. Equitable tolling may also be permitted when the plaintiff "was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon,* 480 F.3d 636, 641–42 (2d Cir.2007) (internal quotation marks omitted); *see also Koch v. Christi's Intern., PLC,* 699 F.3d 141, 157 (2d Cir.2012) (citing *Abbas,* 480 F.3d at 642).

 A claim for false arrest generally accrues on the date of the arrest. *See Wallace v. Kato,* 549 U.S. 384, 397, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in viola-

tion of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *Crichlow v. Butchen*, No. 09 Civ. 4398, 2009 WL 4266711, at *3–4 (E.D.N.Y. Nov. 20, 2009) ("The statute of limitations for a § 1983 civil rights action in New York is three years, and accrues for a false arrest claim at the time of arrest." (citations omitted)); *see also Singleton v. City of N.Y.*, 632 F.2d 185, 191 (2d Cir.1980) (finding that the plaintiff's Section 1983 false arrest claim accrued on the date of his arrest, as that "was the time at which plaintiff knew of his injury arising from the alleged[ly] . . . false arrest"). Moreover, "for claims alleging civil conspiracies, including conspiracies to violate an individual's civil rights, 'the cause of action accrues and the statute of limitations begins to run from the time of commission of the overt act alleged to have caused damages.'" *Poux v. Cnty. of Suffolk*, No. 09 CV 3081, 2010 WL 1849279, at *8 (E.D.N.Y. May 4, 2010) (quoting *Chodos v. Federal Bureau of Investigation*, 559 F.Supp. 69, 74 (S.D.N.Y.1982), *aff'd*, 697 F.2d 289 (2d Cir.1982)) (citing *Singleton*, 632 F.2d at 192; *Afshar v. Procon Inc.*, 442 F.Supp. 887, 891 (S.D.N.Y.1977), *aff'd*, 580 F.2d 1044 (2d Cir.1978)); *see Allen*, 2011 WL 1261103, at *11.

▌ Applying these principles, the Court concludes that Plaintiff's Section 1983 claims against the TJX Defendants are time-barred. Plaintiff's false arrest claims accrued on February 17, 2011, the date he was arrested.[13] Plaintiff alleges that Grimaudo and Renner conspired with Detective Rispoli to fabricate evidence which led to Plaintiff's false arrest. This assertion indicates that the overt acts which formed the basis of this conspiracy occurred—and the conspiracy claims accrued—sometime prior to Plaintiff's arrest on February 17, 2011. Plaintiff did not file his Complaint until February 26, 2014, which is beyond the three-year statute of limitations for his Section 1983 claims against the TJX Defendants. Plaintiff has not asserted any impediment to bringing his Section 1983 claims within the limitations period, and, therefore, his claims are time-barred.

13. Plaintiff argues in his opposition that his false arrest claim did not accrue until his criminal proceedings were dismissed on October 21, 2013 "because defendants' actions constitute a continuing violation." Pl.'s Opp. to TJX Mot. ¶ 6. "The continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date.'" *Shomo*, 579 F.3d at 181 (quoting *Harris v. City of N.Y.*, 186 F.3d 243, 248 (2d Cir.1999)). Pursuant to that doctrine, "[w]hen a plaintiff brings a § 1983 claim challenging that his constitutional rights were violated as a result of an alleged custom or policy, the statute of limitations period does not begin to run until the last act in furtherance of the policy." *Harper v. City of N.Y.*, No. 09–CV–05571, 2010 WL 4788016, at *5 (E.D.N.Y. Nov. 17, 2010) *aff'd*, 424 Fed.Appx. 36 (2d Cir.2011) (citing *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir.1994)).

Plaintiff's attempt here to invoke the continuing violation doctrine is unavailing. To rely on the doctrine, a plaintiff "must allege both the existence of an ongoing policy of *discrimination* and some non-time-barred acts taken in furtherance of that policy." *Harris*, 186 F.3d at 250 (emphasis added). Although Plaintiff contends that TJX "foster[ed] an environment" that encouraged its employees "to racially profile Black males in its stores," Compl. ¶ 25, this conclusory allegation does not amount to a legitimate challenge to a custom or policy for the purposes of invoking the continuing violation doctrine. Moreover, Plaintiff does not seek to challenge a "continuous series of events that gave rise to a cumulative injury." *Harper*, 2010 WL 4788016, at *5. Rather, his claim relates only to the single, discrete act of his false arrest on February 26, 2011. The continuing violation doctrine therefore does not apply in these circumstances.

For the foregoing reasons, the Court respectfully recommends to Judge Bianco that the motion to dismiss by the TJX Defendants be GRANTED.

### D. Motions to Dismiss by The Schlissel Firm and Attorney Prime

The Schlissel Firm and Attorney Prime (collectively, "the Attorney Defendants") move to dismiss Plaintiff's ineffective assistance of counsel claims (mischaracterized by Plaintiff as Section 1983 claims) and state legal malpractice claims pursuant to Rule 12(b)(6). *See* Memorandum of Law in Support of Pre–Answer Motion to Dismiss ("Schlissel Mot.") at 5; Memorandum of Law in Support of Prime's Motion to Dismiss ("Prime Mot.") at 1. The Attorney Defendants contend that dismissal is warranted because (1) they do not qualify as state actors under Section 1983; and (2) Plaintiff has not alleged a cognizable claim for legal malpractice pursuant to state law. Schlissel Mot. at 1–2; Prime Mot. at 5–10. Plaintiff's oppositions to these motions largely mirror the allegations raised in his Complaint. Particularly, in his opposition to the Schlissel Firm's motion, Plaintiff argues that the firm acted negligently and failed to exercise "due diligence" in its representation of Plaintiff by, among other things, "fail[ing] to uncover that the state never possessed the valid instrument necessary to proceed to trial." Pl.'s Affidavit/Affirmation in Opposition to Defendant's Motion at ¶ 2(b) [DE 25]. In opposition to Prime's motion, Plaintiff alleges, as he did in the Complaint, that Prime "acted as a proxy for the Nassau County District Attorney's Office" and that Prime's refusal to subpoena Renner (or otherwise follow Plaintiff's preferred trial strategy) demonstrates that Prime "was given and accepted this impromptu assignment [as Plaintiff's assigned counsel] only to repay and/or curry favors from his former employer." Pl.'s Affidavit/Affirmation in Opposition to Defendant's Motion ("Pl.'s Opp. to Prime Mot.") ¶ 3(a) [DE 22]. For the reasons set forth below, the Court concludes that (1) Plaintiff's Section 1983 claims against the Attorney Defendants must be dismissed and (2) the Court should decline to exercise supplemental jurisdiction over Plaintiff's legal malpractice claims asserted under state law.

#### 1. Section 1983 Claims

▮▮▮▮ "It is well-settled that private attorneys and law firms ... do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law." *Manko v. Steinhardt*, No. 11–CV–5430, 2012 WL 213715, at *4 (E.D.N.Y. Jan. 24, 2012) (citing *e.g. Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir.1975) (private attorney not a state actor)); *see McCloud v. Jackson*, 4 Fed.Appx. 7, 9–10 (2d Cir.2001) ("To the extent that [the defense attorney] may have served as privately-retained counsel, rather than as a court-appointed attorney, he still could not be held liable under § 1983 because there was no showing that he worked with state officials to deprive [the plaintiff] of federal rights."); *Grant v. Hubert*, No. 09–CV–1051, 2009 WL 764559, at *1 (E.D.N.Y. Mar. 20, 2009) (citing *e.g., Polk County v. Dodson*, 454 U.S. 312, 319, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). Similarly, "public defenders, including Legal Aid attorneys, court-appointed counsel and private attorneys do not act under the color of state law merely by virtue of their position." *Delarosa v. Serita*, 2014 WL 1672557, at *3 (E.D.N.Y. Apr. 28, 2014); *see Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir.1997) (private attorney not a state actor by virtue of his appointment by the court to represent a defendant in a state criminal proceeding); *Brown v. Legal Aid Soc.*, 367 Fed.Appx. 215, 216 (2d Cir.2010) ("A 'pub-

lic defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.' ") (quoting *Polk Cnty.*, 454 U.S. at 325, 102 S.Ct. 445); *Licari v. Voog*, 374 Fed.Appx. 230, 231 (2d Cir.2010) ("It is well established that private attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims") (citing *Rodriguez*, 116 F.3d at 65–66); *Shorter v. Rice*, No 12–CV–0111, 2012 WL 1340088, at \*4 (E.D.N.Y. Apr. 10, 2012) ("[N]either public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position[.]").

However, "an otherwise private person or entity," including private or "appointed defense counsel, can act 'under color of state law' if he or it engages in a conspiracy with state officials to deprive a person of his federal rights." *Brewster*, 349 F.Supp.2d at 546 (citing *Tower v. Glover*, 467 U.S. 914, 920, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984)); *see McClinton v. Suffolk Cnty. Police 3rd Precinct*, No. 12–CV–3777, 2014 WL 1028993, at \*4 (E.D.N.Y. Mar. 14, 2014); *Nealy*, 2009 WL 704804, at \*5. As discussed above, claims alleging conspiracies to violate civil rights must be pleaded with specificity and "[a]n otherwise invalid [Section] 1983 claim cannot survive a motion to dismiss merely by mentioning the word " 'conspiracy.' " " *Brewster*, 349 F.Supp.2d at 546. Rather, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324–25.

### a. Application to the Schlissel Firm

■ The Court finds that Plaintiff's pleadings are insufficient to support a conspiracy claim against the Schlissel Firm.

Plaintiff does not allege that the Schlissel Firm acted jointly with a state actor or conspired with a state actor to deprive Plaintiff of some constitutional right, nor does he posit any factual allegations that would support such a claim. Rather, Plaintiff's submissions focus solely on the firm's allegedly negligent representation of him and the purported falsities it perpetrated before the court in his criminal proceedings. Accordingly, the Court respectfully recommends to Judge Bianco that Plaintiff's Section 1983 claims against the Schlissel Firm be dismissed.

### b. Application to Attorney Prime

■ The Court similarly concludes that Plaintiff has not adequately pled a conspiracy claim against Attorney Prime. Plaintiff alleges, in essence, that Prime conspired with the DA's Office to derail Plaintiff's defense in order to protect the DA Office's from liability for alleged misconduct. According to Plaintiff, the DA's Office "hand-picked" Prime because he was formerly employed by the office and "was willing to try to sabotage [Plaintiff's] case to assist in insulating his former employer ... from being held accountable for malicious prosecution and covering up police misconduct." Compl. ¶ 21. Plaintiff alleges that, because Prime was "beholden" to the DA's Office, he refused to call or subpoena Renner as a witness in Plaintiff's criminal case, as doing so "would likely expose [the DA Office's] hidden agenda to cover up the obvious police misconduct." *Id.* However, Plaintiff's Complaint does not allege any specific facts indicating that an agreement existed between the DA's Office and Prime to act in concert to sabotage his criminal defense. In other words, Plaintiff has not alleged facts that "plausibly suggest a 'meeting of the minds,' " *Bertuglia v. City of New York*, 839 F.Supp.2d 703, 728 (S.D.N.Y.

2012), and his bare, implicit allegations that Prime was "beholden" to and acted as a "proxy" for the DA's Office are insufficient to support a conspiracy claim. *See Nealy*, 2009 WL 704804, at \*5. Therefore, the Court respectfully recommends to Judge Bianco that Plaintiff's Section 1983 claims against Attorney Prime be dismissed.

### 2. *Legal Malpractice Claims*

 In addition to his Section 1983 claims, Plaintiff raises state law claims for legal malpractice against the Attorney Defendants. Under 28 U.S.C. § 1367, which governs a federal court's exercise of supplemental jurisdiction, "[t]he district court may decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir.2010). Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors [of judicial economy, convenience, fairness, and comity] will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *see Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 103 (2d Cir. 1998) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them *without* prejudice.") (emphasis in original). Here, the Court has concluded that the ineffective assistance of counsel causes of action against the Attorney Defendants, which Plaintiff has mischaracter-

ized as Section 1983 claims, must be dismissed for failure to state a claim under Rule 12(b)(6). Although the Attorney Defendants argue that Plaintiff's legal malpractice claims may be dismissed on the merits, "no exceptional circumstances exist in this case for the Court to decide these state law claims, and interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain these matters of state law in this case." *Nealy*, 2009 WL 704804, at \*10; *see, e.g., Nelson v. Brown*, No. 13–CV–3446, 2014 WL 4470798, at \*5 (E.D.N.Y. Sept. 10, 2014) (declining to exercise supplemental jurisdiction over state law legal malpractice claim where federal claims were dismissed under Rule 12(b)(6)). Accordingly, the Court recommends to Judge Bianco that the Court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims and that those claims be dismissed without prejudice.[14]

For the foregoing reasons, the Court respectfully recommends to Judge Bianco that the motions to dismiss by the Schlissel Firm and Attorney Prime be GRANTED.

## VI. LEAVE TO RE-PLEAD

Although Plaintiff has not requested leave to amend his Complaint, the Court has considered whether Plaintiff should be given an opportunity to re-plead his various claims against the moving defendants. "When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F.Supp.2d 259,

---

**14.** The Court makes the same recommendation with respect to Plaintiff's state law claim for negligent supervision against TJX.

278 (E.D.N.Y.2005); *see also Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir.2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them"). A court should only deny a *pro se* plaintiff leave to amend when "it is 'beyond doubt that the plaintiff can provide no set of facts in support' of his amended claims." *Pangburn v. Culbertson,* 200 F.3d 65, 71 (2d Cir.1999) (quoting *Ricciuti v. N.Y. City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)).

Even under this liberal standard, however, the court may decline to provide the plaintiff with an opportunity to re-plead if the court finds that the plaintiff "cannot correct the defects in his federal claims" and therefore "any attempt to amend the pleading ... would be futile." *Shorter,* 2012 WL 1340088, at *5; *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). To that end, denial of leave to amend on the basis of futility may be appropriate where a claim is dismissed (1) on sovereign immunity grounds, *see Dasrath v. Stony Brook Univ. Med. Ctr.,* 965 F.Supp.2d 261, 275 (E.D.N.Y.2013) ("Leave to amend would be futile with respect to the claims dismissed due to ... the [defendant's] Eleventh Amendment immunity."); *Temple v. N.Y.S Dep't of Taxation & Fin.,* No. 11–CV–0759, 2012 WL 503618, at *9 (E.D.N.Y. Feb. 15, 2012); (2) because it is time-barred by the applicable statute of limitations, *see Apostolidis v. JP Morgan Chase & Co.,* No. 11–CV–5664, 2012 WL 5378305, at *9 (E.D.N.Y. Nov. 2, 2012) ("[P]laintiff does not have any possibility of asserting plausible federal claims because dismissal is not based upon pleading deficiencies, but rather the applicable statute of limitations which cannot be remedied by any amendments."); *Mercedes v. AVA Pork Products, Inc.,* No. 13–CV–3212, 2014 WL 1369611, at *6 (E.D.N.Y. Apr. 8, 2014); *Nasso v. Bio Reference Labs., Inc.,* 892 F.Supp.2d 439, 455 (E.D.N.Y.2012); and/or (3) due to lack of state action under Section 1983, *see Shorter,* 2012 WL 1340088, at *5; *Leogrande v. Erie Ins. Co. of N.Y.,* No. 11–CV–1319, 2011 WL 1528103, at *4 (E.D.N.Y. Apr. 20, 2011) ("[W]here any amendment to the complaints would clearly be futile because of a lack of state action under Section 1983, dismissal without leave to re-plead is appropriate."); *Contes v. City of N.Y.,* No. 99 Civ. 1597, 1999 WL 500140, at *11 (S.D.N.Y. July 14, 1999) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to § 1983.").

Based on the foregoing case law and the Court's analysis of Plaintiff s claims set forth *supra* in this Report and Recommendation, the Court recommends to Judge Bianco that Plaintiff's federal claims against all of the moving defendants be dismissed, without leave to replead, with the exception of Plaintiff's *Bivens* claims against Agent Gerbino in his individual capacity. Moreover, as previously discussed, the Court recommends that Plaintiff's state law claims be dismissed without prejudice.

## VII. CONCLUSION

Based on the foregoing information, the Court respectfully recommends to Judge Bianco that (1) the motion to dismiss brought by the State of New York be GRANTED and Plaintiff's claims be dismissed WITH PREJUDICE as against the State; (2) the motion to dismiss by the Federal Defendants be (a) GRANTED, in

part, and Plaintiff's claims against the Secret Service and Agent Gerbino in his official capacity be dismissed WITH PREJUDICE, and (b) DENIED, in part, as to Plaintiff's claims against Agent Gerbino in his individual capacity, and that Plaintiff be granted 30 days to serve the Summons and Complaint upon Agent Gerbino; (3) the motion to dismiss by the TJX Defendants be GRANTED and Plaintiff's federal claims against those defendants be dismissed WITH PREJUDICE; (4) the motion to dismiss by the Schlissel Firm be GRANTED and Plaintiff's federal claims against the law firm be dismissed WITH PREJUDICE; (5) the motion to dismiss by Attorney Prime be GRANTED and Plaintiff's federal claims against Prime be dismissed WITH PREJUDICE; and (6) Plaintiff's state law claims against TJX, the Schlissel Firm, and Attorney Prime be dismissed, WITHOUT PREJUDICE.

## VIII. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. Any objections being filed by a *pro se* litigant are to be sent by first-class mail to the Clerk of the Court. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joseph F. Bianco, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Beverly v. Walker,* 118 F.3d 900, 901 (2d Cir.1997), cert. de-

nied, 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

**Defendants' Counsel is directed to serve a copy of this Report and Recommendation upon the *Pro Se* Plaintiff forthwith by overnight mail and first-class mail and to file proof of such service on ECF.**

**SO ORDERED.**

Dated: February 13, 2015.